UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK



U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
FEB 22 2021
AT_____O'CLOCK_____
John M. Domurad, Clerk - Albany

---

Robert Garrasi,

**Plaintiff,**

vs.

Wells Fargo Bank, N.A.;

Selene Finance, LP;

Wilmington Savings Fund Society, FSB;

Wilmington Savings Fund Society, FSB, DBA Christiana Trust, Not In Its Individual Capacity, But Solely As Trustee For BCAT 2015-13ATT;

BCAT 2015-13ATT;

Mortgage Electronic Registration Systems, Inc.;

Knuckles, Komosinski & Manfro, LLP;

Richard F. Komosinski, Esq., and

Stuart L. Kossar, Esq.,

**Defendants.**

---

**COMPLAINT FOR
CIVIL RACKETEERING
18 U.S.C. §1961 *et seq* &
NEW YORK JUDICIARY LAW
§ 487 FRAUD**

**JURY TRIAL DEMANDED**

1:21-CV-202
( GLS/TWD)

## PRELIMINARY STATEMENT

Plaintiff institutes this action for actual damages, statutory damages, attorney's fees, punitive damages, and the costs of this action against Defendants Wells Fargo Bank, N.A.; Selene Finance, LP; Wilmington Savings Fund Society, FSB; Wilmington Savings Fund Society, FSB, Doing Business As Christiana Trust, Not In Its Individual Capacity, But Solely As Trustee For BCAT 2015-13ATT; Mortgage Electronic Registration Systems, Inc.; Knuckles, Komosinski & Manfro, LLP; Richard Komosinski, Esq.; and Stuart Kossar, Esq., for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.,* ("RICO"). Plaintiff institutes this action against Richard Komosinski and Stuart Kossar for violations of New York Judiciary Law § 487.

## JURISDICTION

1.    This Court has jurisdiction for the First Count pursuant to RICO, 18 U.S.C. § 1964(a) & (c), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

2.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## THE PARTIES

3.    Plaintiff Robert Garrasi ("GARRASI" or "PLAINTIFF") is an individual natural person residing in the Town of Clifton Park, Saratoga County, State of New York.

4.    Defendant Wells Fargo Bank, N.A. ("WELLS FARGO") is a national banking association formed under the laws of the United States.

5.    Defendant Selene Finance, LP ("SELENE") is a Delaware limited partnership, headquartered in the State of Texas, and authorized to do business in the State of New York. SELENE is a mortgage loan servicer.

6.    Defendant Wilmington Savings Fund Society, FSB ("WILMINGTON") is a federal savings bank formed under the laws of the United States with its corporate headquarters located in the State of Delaware.

7.    Defendant Wilmington Savings Fund Society, FSB, Doing Business As Christiana Trust, Not In Its Individual Capacity, But Solely As Trustee For BCAT 2015-13ATT ("TRUSTEE"), purports to be a trustee for BCAT 2015-13ATT.

8.   Defendant BCAT 2015-13ATT ("BCAT") purports to be a Delaware Statutory trust. [1]

9.   BCAT 2015-13ATT, claims that its offices are located at 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801.

10.   As a Delaware statutory trust, BCAT 2015-13ATT was required in 2015 to file its trust agreement and register with the Delaware Secretary of State.

11.   The Delaware Secretary of State's website has no record of BCAT 2015-13ATT's existence as a Delaware statutory trust.

12.   Defendant Knuckles, Komosinski & Manfro, LLP ("KKM"), is a New York law firm located in Elmsford, New York, and operating as a New York limited liability partnership.

13.   KKM specializes in mortgage foreclosure actions.

14.   Defendant Richard Komosinski ("KOMOSINSKI") is an individual, an attorney licensed to practice law in the State of New York, a resident of the State of New York, and one of the managing partners in KKM.

---

[1]   A Delaware Statutory trust is a business trust, and as a business trust BCAT 2015-13ATT is required to comply with the provisions of New York's General Associations Law in order for the trust to maintain an action in New York State. One of those provisions is that a business trust register with the Secretary of State and pay all current or past due financial obligations to New York. BCAT 2015-13ATT has never complied with any of the provisions of New York General Associations Law.

15.   Defendant Stuart Kossar ("KOSSAR") is an individual, an attorney licensed to practice law in the State of New York, a former employee of KKM, and a resident of the State of New York.

16.   Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a nationwide electronic mortgage registry company, is a Delaware corporation authorized to do business in the State of New York, and is headquartered in Reston, Virginia.

17.   At all times relevant herein, the Defendants were each a legal organization, entity, or natural person that engaged in activities that affect interstate commerce.

18.   At all times relevant herein, the Defendants are "persons" as defined under RICO in 18 U.S.C. § 1961 (3).

19.   At all times relevant herein, the Defendants acting individually or in concert constituted an "Enterprise" as defined under RICO in 18 U.S.C. § 1961 (4).

20.   At all times relevant herein, the Defendants were and are engaged in a "pattern of racketeering activity" as defined in 18 U.S.C. § 1962 (c).

21.   At all times relevant herein, the Defendants conspired to violate the provisions of 18 U.S.C. § 1962 (b) & (c), and thereby violated the provisions of 18 U.S.C. 1962 (d).

## COUNT 1

## CIVIL RACKETEERING AGAINST ALL DEFENDANTS

## – FACTUAL ALLEGATIONS –

## WELLS FARGO [2]

22.   PLAINTIFF realleges all prior allegations of fact as if separately stated hereat.

23.   The RICO Enterprise, existing separate from the Defendants herein, consists of a fraudulent foreclosure action designed to illegally deprive the foreclosure defendants of their real property by means of a scheme and artifice to defraud, as will be described in factural detail herein.

24.   The Defendants' RICO enterprise was an Association-In-Fact enterprise as defined in *Boyle v. United States*, 556 U.S. 938 (2009), relying largely on *United States v. Turkette*, 452 U. S. 576, 583 (1981).

25.   WELLS FARGO's role in the Enterprise was to fraudulently claim that the Zebrowski Note and Mortgage were owned by WELLS FARGO, allegedly having been negotiated to WELLS FARGO on or about July 9, 2012 by MERS

---

[2]   Defendant WELLS FARGO is presently under a 3 year criminal Deferred Prosecution Agreement with the U.S. Department of Justice, agreeing to pay to the DOJ and the SEC $3 billion for the creation of millions of false and fraudulent customer documents and accounts during the period 2002–2016. WELLS FARGO and the government entered into the DPA on February 20, 2020. *See* https://www.cnn.com/2020/02/21/business/wells-fargo-settlement-doj-sec/index.html.

acting on behalf of the original Zebrowski mortgagee SunTrust Mortgage, Inc. ("SunTrust").

26.   The Zebrowski mortgage loan was in the amount of $312,000 and was executed by the mortgagors on August 16, 2005, and was recorded in the Saratoga County Clerk's office on August 29, 2005, Book 326, Page 3919, Instrument No. 200606867.

27.   At the same time that the Zebrowskis executed the above mortgage, they also executed a promissory note payable to SunTrust. **EXHIBIT A** annexed herewith.

28.   The original Zebrowski note executed on August 16, 2005 in favor of SunTrust will now be referenced herein as <u>Zebrowski Note # 1</u>.

29.   On or about November 2, 2005, SunTrust sold the mortgage loan and mortgage to the Federal Home Loan Mortgage Association ("Freddie Mac" or "Freddie"). **EXHIBIT B** annexed herewith.

30.   On June 29, 2012, the Zebrowskis filed a federal bankruptcy petition in the Northern District of New York, Case No. 12-11799-1.

31.   WELLS FARGO and MERS, using the U.S. mails and/or wire services, filed a fraudulent ZEBROWSKI mortgage assignment in the Saratoga County Clerk's office on July 12, 2012. **EXHIBIT C** annexed herewith.

32. The assignment purported to transfer to WELLS FARGO both the Zebrowski mortgage and all of MERS' beneficial interest in the mortgage for good and valuable consideration received.

33. This fraudulent assignment of the Zebrowski mortgage allowed WELLS FARGO to claim falsely that it was a Zebrowski mortgage loan creditor in the Zebrowski bankruptcy case.

34. On or about October 31, 2012 WELLS FARGO in Minnesota, using the mails and/or wire services, filed a false and fraudulent proof of claim in the Zebrowski bankruptcy case that was pending in the NDNY. **EXHIBIT D** annexed herewith.

35. In that proof of claim, WELLS FARGO falsely and fraudulently identified itself as the Zebrowski mortgage loan "Creditor."

36. The bankruptcy code's definition of "Creditor" is found in **EXHIBIT E** annexed herewith.

37. WELLS FARGO and MERS (the purported nominee for SunTrust), using the U.S. mails and wire services, falsely and fraudulently represented to the U.S. Bankruptcy Court that MERS had lawfully assigned the Zebrowski mortgage and note to WELLS FARGO. **EXHIBIT F** annexed herewith.

38. In point of fact, and at all times relevant herein, neither MERS nor WELLS FARGO ever had any beneficial interest in the Zebrowski mortgage, nor did

MERS or SunTrust ever receive any consideration from WELLS FARGO for the purported mortgage assignment.

39. Filing a false proof of claim in a bankruptcy case is a violation of 18 U.S.C. § 152, and is a RICO predicate act.

40. Filing a false proof of claim in a bankruptcy case via the U.S. mails is a violation of 18 U.S.C. § 1341, and doing so using internet or fax wire services to file such a claim is a violation of 18 U.S.C. § 1343.

41. A copy of the Zebrowski mortgage note indorsed in blank by SunTrust and thereafter filed in the WELLS FARGO proof of claim in the Zebrowski bankruptcy case, is annexed hereto as **EXHIBIT G**. This note is referenced herein as <u>Zebrowski Note # 2</u>.

42. When WILMINGTON and TRUSTEE, acting in concert and conspiratorially, filed the state foreclosure action against the Zebrowskis on April 12, 2016, using the U.S. mails and/or wire services, WILMINGTON and TRUSTEE included as an exhibit to the Complaint a copy of the Zebrowski Note.

43. But when the foreclosure Complaint was filed, the Zebrowski note now showed a forged specific indorsement from SunTrust to WELLS FARGO. This note is referenced herein as <u>Zebrowski Note # 3</u>. **EXHIBIT H** annexed herewith.

44.   The forged specific indorsement to WELLS FARGO that was placed on the
SunTrust Zebrowski Note was therefore placed on <u>Zebrowski Note # 3</u>
almost *seven years after SunTrust had sold the note to Freddie*, and SunTrust no
longer had any legal or beneficial ownership in the Note, nor any lawful
authority to indorse the note to WELLS FARGO.

45.   But SunTrust never indorsed the Zebrowski note to WELLS FARGO.

46.   WELLS FARGO, its agents and/or employees, forged the SunTrust specific
indorsement on the Zebrowski note to WELLS FARGO.

47.   Even a cursory inspection of <u>Zebrowski Note #3</u> clearly shows that the font
on the SunTrust specific indorsement to WELLS FARGO does not match the
rest of the SunTrust indorsement stamp fonts, but the font does match the
font used on the WELLS FARGO indorsement stamp.

48.   PLAINTIFF alleges that WELLS FARGO, MERS, SELENE, WILMINGTON,
TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR, acting individually and/or
collectively, conspired to further the goals of the criminal Enterprise, and
using the U.S. mails and/or wire services:

   a.   Created and executed the fraudulent SunTrust Zebrowski mortgage
assignment to WELLS FARGO on July 9, 2012;

   b.   On or about July 12, 2012, filed with the Saratoga County Clerk the
fraudulent July 9, 2012 mortgage assignment;

c.      Replaced the blank SunTrust mortgage note indorsement with a forged specific SunTrust indorsement to WELLS FARGO, subsequent to January 1, 2015, nearly 9.5 years after SunTrust had sold the Zebrowski mortgage note to Freddie Mac;

d.      Served the forged and fraudulently indorsed SunTrust Zebrowski mortgage note and mortgage assignments upon the Zebrowski defendants in the foreclosure action on or about April 12, 2016;

e.      Filed with the court and the Saratoga County Clerk the forged and fraudulently indorsed SunTrust Zebrowski mortgage note and mortgage assignments in the Zebrowski foreclosure action, as exhibits to the foreclosure complaint, on or about April 12, 2016;

f.      In 2016, served the forged and fraudulently indorsed SunTrust Zebrowski mortgage note and mortgage assignments in the Zebrowski foreclosure action upon the PLAINTIFF GARRASI, when GARRASI became an intervening defendant in the mortgage foreclosure action.

g.      Filed with the foreclosure court and the Saratoga County Clerk the forged and fraudulently indorsed SunTrust Zebrowski mortgage note, the fraudulent limited powers of attorney, the fraudulent mortgage assignments, along with a supporting perjured affidavit from SELENE's

employee Anthony D'Addona, when Defendants in this action made a

motion for summary judgment on or about January 11, 2018;

h.   Served upon foreclosure defendant GARRASI, the fraudulent mortgage

assignments, the SunTrust Zebrowski note containing the forged

indorsement, the fraudulent limited powers of attorney, and

D'Addona's perjured supporting affidavit, when Defendants made

their January 11, 2018 motion for summary judgment in the

Zebrowski foreclosure action.

49.   In 2012, when WELLS FARGO filed the false proof of claim in the Zebrowski

bankruptcy case, WELLS FARGO violated 18 U.S.C. § 152, and such filing was

a RICO predicate act.

50.   WELLS FARGO's filing of the false proof of claim was designed to extract

whatever funds could be extracted from the Zebrowski bankruptcy estate,

and to tee up the Zebrowskis for the prospective foreclosure action.

51.   Subsequent to March 1, 2015 WELLS FARGO violated 18 U.S.C. § 1341, mail

fraud, by using the mails to transfer a forged instrument, i.e., the Zebrowski

SunTrust Note, from either Minnesota or Iowa to SELENE in Texas.

52.   Subsequent to March 1, 2015 WELLS FARGO violated 18 U.S.C. § 1343, wire

fraud, by using wire services to include fax, email, and the internet to

transfer a forged instrument, i.e., the Zebrowski SunTrust Note, from either Minnesota or Iowa to SELENE in Texas.

53.     Subsequent to March 1, 2015, WELLS FARGO fraudulently assigned the note and mortgage to TRUSTEE,

54.     In 2015-2016 WELLS FARGO violated 18 U.S.C. § 1341, mail fraud, by using the mails to file false, fraudulent, forged instruments, and perjured affidavits, affirmations, and certifications, with the Saratoga County Clerk, the foreclosure court, and then serving those instruments and documents upon the foreclosure Defendants.

55.     As established above, however, WELLS FARGO, could not have legally sold or assigned the defaulted Zebrowski note and mortgage to TRUSTEE, because SunTrust had already sold the Zebrowski note and mortgage to Freddie Mac in November of 2005.

56.     WELLS FARGO, subsequent to May 1, 2015, then entered into a fraudulent arrangement and agreement with SELENE, claiming that SELENE was authorized to act on WELLS FARGO's behalf with respect to WELLS FARGO's purported ownership of the defaulted Zebrowski note and mortgage.

57.     In order to accomplish the foregoing, WELLS FARGO granted SELENE a fraudulent Limited Power Of Attorney ("LPOA") on June 10, 2015, which was

recorded in the Saratoga County Clerk's office on July 8, 2015. **EXHIBIT I** annexed herewith.

58.   The fraudulent LPOA authorized SELENE to function as WELLS FARGO's agent in legal and financial matters relating to certain mortgage notes and mortgages in which WELLS FARGO claimed to have an interest, including the Zebrowski note and mortgage. *Id.*

59.   The fraudulent LPOA also authorized SELENE to do all things that WELLS FARGO could do with respect to the mortgage loans and their administration, which would necessarily include securing foreclosure counsel and providing fraudulent documents and perjured affidavits as necessary. *Id.*

60.   This fraudulent arrangement and LPOA agreement with SELENE was a necessary tool required to advance the goal of the criminal racketeering Enterprise, which goal was to deprive the defendants in the foreclosure action of their real property.

61.   Subsequent to June 9, 2015, using the mails and/or wire services, WELLS FARGO in Minnesota transmitted across state lines the June 10, 2015 fraudulent LPOA to SELENE in Texas.

62.   Further, WELLS FARGO refused in the Zebrowski foreclosure action to produce any accounting journals or ledgers proving that it paid for the

Zebrowski note and mortgage, even though Defendant GARRASI in the foreclosure action requested such information during discovery.

63.   Because WELLS FARGO never paid for the Zebrowski note it knew that it had illegal possession of the Zebrowski note.

64.   And in the state foreclosure action WELLS FARGO has refused to respond or object to a subpoena served upon it over a year and a half ago seeking information and documentation regarding WELLS FARGO's role in the forged and fraudulently altered Zebrowski note and fraudulent mortgage assignments.

65.   Further, the original SunTrust Zebrowski note was originated in New York and then sent by either a New York title company, a New York mortgage broker, or other New York agent of or for SunTrust, to SunTrust in Virginia.

66.   Thus, in order for WELLS FARGO to get possession of the purloined Zebrowski note in Minnesota, the note would have had to have crossed state lines via mail or physical transport.

67.   WELLS FARGO knew when it received the Zebrowski note that WELLS FARGO had come into possession of stolen or converted property.

68.   Thereafter WELLS FARGO forged and altered the note to make WELLS FARGO the specific payee.

69. WELLS FARGO accomplished this by having an employee named Jason P. Brumm, purporting to be a Wells Fargo Vice President Loan Documentation, indorse the Zebrowski SunTrust note in blank. See <u>Zebrowski Note # 3</u>.

70. But because WELLS FARGO was neither an owner or holder of the Zebrowski note, Brumm had no authority to indorse the note to anyone.

71. Subsequent to May 1, 2015, and in furtherance of the goals of the racketeering Enterprise's scheme or artifice to defraud, WELLS FARGO in Minnesota then used the mails and/or wire services to transfer or transmit the converted and forged note across state lines to SELENE in Texas.

72. By so doing, WELLS FARGO violated 18 U.S.C. § 1341 (mail fraud), or 18 U.S.C. § 1343 (wire fraud), both of which are RICO predicate acts.

73. Additionally, WELLS FARGO's knowingly possessing or transmitting across state lines stolen or converted property in excess of $5,000, to include securities such as the Zebrowski note, was a violation of 18 U.S.C. § 2314, which is also a RICO predicate act.

74. And WELLS FARGO's receiving, possessing, or storing knowingly stolen or converted property or securities in excess of $5,000, that have crossed state lines, is a violation of 18 U.S.C. § 2315, which is also a RICO predicate act.

75. The Zebrowski mortgage note's value exceeds $5,000.

76.   On September 23, 2015, WELLS FARGO, using the mails or wire services, filed another fraudulent assignment of the Zebrowski mortgage with the Saratoga County Clerk, wherein WELLS FARGO falsely claimed to be the "holder" [sic] of the Zebrowski mortgage.[3] **EXHIBIT J** annexed herewith.

77.   The fraudulent mortgage assignment purported to assign the mortgage to the Plaintiff TRUSTEE (BCAT 2015). *Id.*

78.   The assignment also falsely claimed that BCAT 2015 paid value to WELLS FARGO for the mortgage assignment. *Id.*

79.   WELLS FARGO, in Minnesota, on or about January 14, 2016, sent to SELENE in Texas, via mail or wire services, a Zebrowski collateral file that included the original or a copy of the Zebrowski Note with the forged indorsement upon it. **EXHIBIT K** annexed herewith.

80.   By this time, the collateral file would have included <u>Zebrowski Note # 3</u> with the forged SunTrust to WELLS FARGO indorsement.

81.   WELLS FARGO, in Minnesota, on or about October 26, 2018, again sent via mail or wire services, a Zebrowski collateral file to SELENE in Texas, that included the original or a copy of the Zebrowski Note with the forged indorsement upon it. **EXHIBIT L** annexed herewith.

---

[3]   One can only be a "holder" of a negotiable instrument. A mortgage is not a negotiable instrument. Thus, one can only an owner or assignee of a mortgage.

82. WELLS FARGO received compensation from SELENE, other members of the Enterprise, or the Enterprise itself for forging and delivering the SunTrust Zebrowski Note to Selene, and/or to other members of the Enterprise.

83. WELLS FARGO thus derived income from SELENE, other members of the Enterprise, or the Enterprise itself, and then used, invested, or reinvested some part of that income in the establishment and operation of an Enterprise, i.e., the bank itself, which was engaged in, or its activities affected, interstate commerce.

84. Since the Zebrowski Enterprise foreclosure action was unlawful, WELLS FARGO's forging and providing the SunTrust Zebrowski Note that aided and abetted the prosecution of that foreclosure action, violated 18 U.S.C. § 1962 (a).

85. WELLS FARGO was engaged in actions that affect interstate commerce through a pattern of racketeering activity, i.e., mail fraud and wire fraud.

86. WELLS FARGO maintained and interest in the foreclosure action Enterprise.

87. WELLS FARGO thus violated 18 U.S.C. § 1962 (b).

88. WELLS FARGO was employed by or associated with the unlawful foreclosure Enterprise.

89.   WELLS FARGO participated, directly or indirectly, in the conduct of the Enterprise's affairs.

90.   WELLS FARGO thus violated 18 U.S.C. § 1962 (c).

91.   By conspiring with the other members of the Enterprise to violate 18 U.S.C. §§ 1962 (a)-(c), WELLS FARGO violated 18 U.S.C. § 1962 (d).

92.   WELLS FARGO is an entity that exists independently of the racketeering Enterprise.

93.   WELLS FARGO has committed two or more RICO predicate acts within the last 10 years, constituting a continuing pattern of racketeering.

## SELENE, BCAT, WILMINGTON & TRUSTEE

94.  PLAINTIFF realleges all prior allegations of fact as if separately stated hereat.

95.  Defendants SELENE, BCAT, and WILMINGTON conspired with each other to create fraudulent documents used by the Enterprise.

96.  SELENE drafted a number of these fraudulent documents for the Enterprise.

97.  After SELENE drafted the fraudulent documents, [4] SELENE mailed or wired them from Texas to WILMINGTON and/or BCAT in Delaware.

98.  One such document was an LPOA executed on May 13, 2015 by Jeffrey R. Everhart who claimed to be an Assistant Vice President of BCAT. **EXHIBIT M** annexed herewith.

99.  The LPOA that Everhart executed purported to appoint SELENE as BCAT's attorney in fact authorizing SELENE to act in all legal and financial matters in BCAT's stead, to include the Zebrowski foreclosure matter. [5]

100.  But because BCAT is alleged to be a trust, it has no assistant vice presidents in its employ, nor did it ever.

---

[4]  Page 1 of the LPOA states that the LPOA was drafted by SELENE.

[5]  Although executed on May 13, 2015, the LPOA was not recorded in the Saratoga County Clerk's office until April 9, 2020, four years after the Zebrowski foreclosure action was commenced.

101. Nevertheless, Yulia Davydovitch, [6] the notary taking Everhart's acknowledged signature on the LPOA, states that Everhart was personally known to her as both the signatory on the LPOA as well as an Assistant Vice President of BCAT. *Id.*

102. Notary Davydovitch further stated that Everhart acknowledged to her "that such national banking association [BCAT] executed the within instrument pursuant to its by-laws or a resolution of its board of directors." *Id.*

103. But BCAT is not a national banking association, but rather claims to be a Delaware Statutory trust.

104. BCAT therefore has no by-laws, nor any board of directors.

105. Moreover, as evidence of the conspiracy between WILMINGTON, SELENE, and BCAT, the LPOA signature page states that the Document was drafted by BCAT. *Id.*

106. After SELENE drafted the LPOA in Texas, it used the mails and/or wire services to send the LPOA to WILMINGTON and BCAT in Delaware so that the LPOA could be executed by Everhart.

107. After Everhart executed the LPOA in Delaware, it was sent back to SELENE in Texas via the mails or wire services.

---

6   Yulia Davydovitch is employed by Christiana Bank & Trust, a division of Defendant WILMINGTON.

108.  Thereafter, SELENE, using the mails and/or wire services, forwarded the

LPOA on to Charles Brown & Associates, located at 2316 Southmore,

Pasadena, TX 77502, with instructions to file and record the LPOA in the

Saratoga County Clerk's Office.

109.  Using the mails and/or wire services, Charles Brown & Associates as SELENE's

agent, then forwarded the LPOA on to the Saratoga County Clerk's Office's

with instructions to file and record the LPOA.

110.  On or about February 16, 2017, using the U.S. mails, SELENE sent a

fraudulent collection letter to the Zebrowskis and PLAINTIFF demanding

payment by March 1, 2017. The amount of the payment demanded was

$106,886.36. Since the Zebrowski mortgage debt was discharged in

bankruptcy, this letter constituted a violation of the Fair Debt Collection

Practices Act ("FDCPA").

111.  On or about March 16, 2017, using the U.S. mails, SELENE sent another

fraudulent collection letter to the Zebrowskis and PLAINTIFF demanding

payment by April 1, 2017.  The amount of the payment demanded was

$110,393.86. Again, this letter also constituted a violation of the FDCPA.

112.  On or about June 5, 2018, using the U.S. mails, SELENE sent a letter to the

Zebrowskis and PLAINTIFF stating that SELENE had purchased hazard

insurance on the Stablegate premises, that the premiums would amount to

22

$1,990.20 per year, and that said amount would be added to the mortgage loan account, and would be charged to the Zebrowskis and that the Zebrowskis would have to pay SELENE back for this expense. This letter also violated the FDCPA.

113.  On or about July 27, 2018, using the U.S. mails, SELENE sent a second letter to the Zebrowskis and PLAINTIFF stating again that SELENE had purchased hazard insurance on the Stablegate premises, that the premiums would amount to $1,990.20, and that said amount would be added to the mortgage loan account, and would be charged to the Zebrowskis, and that the Zebrowskis would have to pay SELENE back for this expense. This letter also violated the FDCPA.

114.  On or about October 29, 2018, using FedEx mail, Selene in Texas sent the collateral file containing the aforementioned forged and fraudulent documents to KKM in New York. **EXHIBIT N** annexed herewith.

115.  On or about April 4, 2019, KKM using FedEx mail sent the Zebrowski SunTrust mortgage and note with the forged indorsement to the law firm of McGlinchey Stafford, PLLC in New York City.  **EXHIBIT O** annexed herewith.

116.  On or about April 5, 2020, SELENE's agent, Charles Brown & Associates, using the mails or wire services, sent from Texas the fraudulent LPOA that was executed by Jeffrey Everhart in September 2015, to the Saratoga County

Clerk in New York for recording and filing in the Enterprise foreclosure action.

117.   On April 9, 2020, the Saratoga County Clerk recorded the fraudulent LPOA in both the county land records and in the pending foreclosure action.

118.   Also, on April 9, 2020, SELENE used the LPOA to purportedly convey the Zebrowski mortgage out of the BCAT 2015-13ATT trust, to a new Delaware Statutory trust, BCAT 2020-1TT.

119.   Since the Zebrowski foreclosure action was unlawful, WILMINGTON's knowing and willful participation as a trustee plaintiff in that foreclosure action aided and abetted the Enterprise's unlawful scheme and artifice to defraud, and violated 18 U.S.C. § 1962 (a).

120.   WILMINGTON, BCAT, and TRUSTEE were thus engaged in actions that affect interstate commerce through a pattern of racketeering activity, i.e., mail fraud and wire fraud.

121.   WILMINGTON, BCAT, and TRUSTEE maintained and interest in the Enterprise foreclosure action.

122.   WILMINGTON, BCAT, and TRUSTEE thus violated 18 U.S.C. § 1962 (b).

123.   WILMINGTON, BCAT, and TRUSTEE were employed by or associated with the unlawful foreclosure Enterprise.

124.   WILMINGTON, BCAT, and TRUSTEE participated, directly or indirectly, in the conduct of the Enterprise's affairs.

125.   WILMINGTON, BCAT, and TRUSTEE thus violated 18 U.S.C. § 1962 (c).

126.   By conspiring with the other members of the Enterprise to violate 18 U.S.C. §§ 1962 (a)-(c), WILMINGTON, BCAT, and TRUSTEE violated 18 U.S.C. § 1962 (d).

127.   WILMINGTON, BCAT, and TRUSTEE are entities that exist independently of the racketeering Enterprise.

128.   WILMINGTON, BCAT, and TRUSTEE have committed two or more RICO predicate acts within the last 10 years, constituting a continuing pattern of racketeering.

129.   As established above, SELENE, working independently or in concert with WELLS FARGO, WILMINGTON, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR, was responsible for the forged and fraudulent note indorsement and the fraudulent Zebrowski mortgage assignments.

130.   As established above, SELENE also entered into fraudulent LPOAs with both WELLS FARGO and WILMINGTON.

131.   SELENE selected WILMINGTON to be the Enterprise plaintiff trustee for BCAT.

132.  Further, SELENE has selected WILMINGTON to be putative plaintiff trustee in over 25 New York mortgage foreclosure actions since 2010. (Source: eCourts)

133.  SELENE was responsible for paying WILMINGTON's putative trustee or service fees for acting as the BCAT trustee plaintiff in the Zebrowski foreclosure action.

134.  SELENE was also responsible for selecting the Defendant KKM law firm to initiate the Enterprise's fraudulent Zebrowski foreclosure action.

135.  SELENE has selected KKM to be legal counsel for over 25 trustee mortgage foreclosure plaintiffs since 2010. (Source: eCourts)

136.  SELENE was the party responsible for paying KKM legal fees allegedly incurred by TRUSTEE in the Zebrowski foreclosure action Enterprise.

137.  Defendants SELENE, WILMINGTON, KKM, and KOMOSINSKI have formed five or more similar unlawful foreclosure Association-In-Fact Enterprises in both New York and New Jersey since 2010.

138.  SELENE thus conspired with WILMINGTON, WELLS FARGO, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR to conduct, execute, and carry out the Association-In-Fact racketeering Enterprise.

139.  In furtherance of the Enterprise's goal, SELENE executed a fraudulent Zebrowski loan servicing agreement with WELLS FARGO.

140. The loan servicing agreement was fraudulent because WELLS FARGO did not own the Zebrowski mortgage loan.

141. In furtherance of the Enterprise's goal, SELENE executed a fraudulent trustee agreement with TRUSTEE and BCAT.

142. In furtherance of the Enterprise's goal, SELENE executed a legal services retainer agreement with KKM, for the purpose of bringing the Enterprise's fraudulent foreclosure action.

143. In furtherance of the Enterprise's goal, between May 1, 2015 and April 12, 2016, SELENE transmitted all the above fraudulent agreements to WELLS FARGO, BCAT, WILMINGTON, TRUSTEE and KKM, across state lines, using the mails and/or wire services.

144. In furtherance of the Enterprise's goal, between May 1, 2015 and April 12, 2016, after executing the above fraudulent agreements, acting individually or collectively, WELLS FARGO, BCAT, WILMINGTON, TRUSTEE and KKM, used the mails and wire services to send executed copies of those agreements from their respective states back to SELENE in Texas.

145. One of SELENE's key responsibilities in the racketeering Enterprise was to provide forged and fraudulent documents.

146. These documents included the Zebrowski mortgage and note assignments, as well as well as causing SELENE's employees and/or agents to provide

perjured affidavits so as to secure an unlawful summary judgment and/or an unlawful judgment of foreclosure and sale for the Enterprise.

147.  As an example, SELENE produced an affidavit of its employee Anthony D'Addona sworn to November 7, 2017. **EXHIBIT P** annexed herewith.

148.  In his affidavit, D'Addona falsely stated that he was authorized to execute the affidavit by WILMINGTON and TRUSTEE by way of a valid LPOA; that SunTrust assigned the Note and Mortgage to Wells Fargo; that the Mortgage was assigned from WELLS FARGO to TRUSTEE on Sept. 3, 2015; that TRUSTEE was the owner and/or holder of the Note and assignee of the Mortgage on the date the Summons & Complaint was filed; and that the Note was indorsed in blank during the pendency of the foreclosure action. (Clearly, it was not.)

149.  All of the above sworn statements that D'Addona made on behalf of, and at the direction of defendant SELENE, were false.

150.  And at the time that D'Addona made those sworn statements on behalf of and at the direction of his employer Defendant SELENE, both he and Defendant SELENE knew the statements to be false, and both D'Addona and SELENE intended for the Zebrowskis, GARRASI, and the Court to justifiably rely upon the false statements and be damaged thereby.

151. D'Addona's perjured affidavit was sent by SELENE from Florida, via the mails or wire services, to KKM, KOMOSINSKI, and/or KOSSAR in Elmsford, New York.

152. D'Addona's affidavit was included as an EXHIBIT to KOSSAR'S Affirmation in Support of TRUSTEE's Motion for Summary Judgment dated January 11, 2018.

153. KKM, KOMOSINSKI, and KOSSAR, on or about January 11, 2018, using the mails and/or wire services, thereupon filed TRUSTEE'S fraudulent Summary Judgment Motion Papers, to include the perjured D'Addona affidavit, with both the Saratoga County Clerk and the foreclosure Court and served them upon GARRASI.

154. KKM, KOMOSINSKI, and KOSSAR, also on or about January 11, 2018, using the mails and/or wire services, filed and served upon GARRASI a Memorandum of Law in support of plaintiff's motion for summary judgment.

155. The Memorandum of Law contained false statements and allegations such as: plaintiff's mortgage note/loan assignor was SunTrust Mortgage, Inc.; that the plaintiff made a prima facie showing of entitlement to judgment as a matter of law; that the plaintiff authenticated its position; that the motion was well supported by the complaint, affidavit, and affirmation thereto,

along with the requisite supporting documentary evidence; that plaintiff was a holder of the note, properly indorsed.

156.  None of the foregoing allegations of fact made by KKM, KOSSAR, or KOMOSINSKI were true, and at the time that the Defendants made those allegations, they knew them to be false.

157.  Thereafter, SELENE, on or about October 29, 2018, using FedEx mail service, sent a fraudulent Bailment Letter to KKM.  **EXHIBIT N**, annexed herewith.

158.  The Bailment Letter stated that enclosed was the original Zebrowski Note endorsed [sic] from Suntrust Mortgage to Wells Fargo Bank, N.A.

159.  SELENE, in the Bailment Letter, also stated that it had retained KKM to oversee and manage the foreclosure proceedings.

160.  Since SunTrust never specifically indorsed the Zebrowski original Note to Defendant WELLS FARGO, the Bailment Letter and the forged Zebrowski Note constituted another act of mail fraud and or wire fraud, and a RICO predicate act, on the part of SELENE.

161.  Since the Zebrowski foreclosure action was unlawful, SELENE's participation assisting WILMINGTON, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR in the Zebrowski foreclosure action aided and abetted the Enterprise's unlawful actions in furtherance of the Enterprise's goals, thus violating 18 U.S.C. § 1962 (a).

162. Defendants SELENE, WILMINGTON, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR are or were engaged in actions that affect interstate commerce through a pattern of racketeering activity, i.e., mail fraud and wire fraud, at a minimum.

163. Defendants SELENE, WILMINGTON, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR maintain or maintained an interest in the unlawful foreclosure Enterprise.

164. Defendants SELENE, WILMINGTON, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR thus derived income from the Enterprise or its members, and then used, invested, or reinvested some part of that income in the establishment and operation of an enterprise, i.e., their own active participation in the Enterprise, which was engaged in, or its activities affected, interstate commerce.

165. Defendants SELENE, WILMINGTON, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR thus violated 18 U.S.C. § 1962 (b).

166. Defendants SELENE, WILMINGTON, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR are or were employed by or associated with the unlawful foreclosure Enterprise.

167. Defendants SELENE, WILMINGTON, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR participated and/or continue to participate, directly or indirectly, in the conduct of the foreclosure Enterprise's affairs.

168. Defendants SELENE, WILMINGTON, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR thus violated 18 U.S.C. § 1962 (c).

169. Defendants SELENE, WILMINGTON, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR, by conspiring with the other members of the unlawful foreclosure Enterprise violated 18 U.S.C. §§ 1962 (a)-(c), violated 18 U.S.C. § 1962 (d).

170. Defendants SELENE, WILMINGTON, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR are persons or entities that exist independently of the racketeering Enterprise.

171. Defendants SELENE, WILMINGTON, TRUSTEE, BCAT, KKM, KOMOSINSKI, and KOSSAR have committed two or more RICO predicate acts within the last 10 years, constituting a continuing pattern of racketeering.

## MERS

172.   PLAINTIFF realleges all prior allegations of fact as if separately stated hereat.

173.   Defendant MERS' role in the racketeering enterprise was to provide the initial "lubrication" for the fraudulent SunTrust mortgage assignment to WELLS FARGO.

174.   It provided this lubrication by purporting to be the lawful nominee for SunTrust, the original lender, with authority to execute the Zebrowski mortgage assignment on behalf of SunTrust to WELLS FARGO.

175.   MERS, at the time that it fraudulently assigned the SunTrust Zebrowski mortgage to WELLS FARGO in July 2012, knew that it did not have any lawful authority or capacity to execute such an assignment.

176.   MERS then used the mails and/or wire services to transmit the fraudulent SunTrust Zebrowski mortgage assignment from MERS's principal place of business in Danville, Illinois or in Flint, Michigan, to the Saratoga County Clerk's office in New York for recording.

177.   The Saratoga County Clerk recorded MERS' fraudulent mortgage assignment on July 12, 2012.

178.   Also in July 2012, MERS from its offices in Flint, Michigan or in Danville, Illinois, used the mails and/or wire services to send a copy of the fraudulent

Zebrowski mortgage assignment to Defendant WELLS FARGO in Minneapolis, Minnesota and/or to WELLS FARGO's offices in Des Moines, Iowa.

179. Since the Zebrowski foreclosure action was unlawful, MERS's knowing participation in that foreclosure action via mail and wire services aided and abetted the other members of the Enterprise, in the Enterprise's unlawful scheme or artifice to defraud, and in furtherance of the Enterprise's goals.

180. MERS thus violated 18 U.S.C. § 1962 (a).

181. MERS was engaged in actions that affect interstate commerce through a pattern of racketeering activity, i.e., mail fraud and/or wire fraud.

182. MERS maintained and interest in the foreclosure action Enterprise.

183. MERS thus violated 18 U.S.C. § 1962 (b).

184. MERS was employed by or associated with the unlawful foreclosure Enterprise.

185. MERS was compensated for its services by members of the Enterprise, i.e., Defendants SELENE, WILMINGTON, TRUSTEE, BCAT, or WELLS FARGO.

186. MERS thus derived income from the Enterprise or its members, and then used, invested, or reinvested some part of that income in the establishment and operation of an enterprise, i.e., MERS itself, which was engaged in, or its activities affected, interstate commerce.

187.  MERS participated, directly or indirectly, in the conduct of the Enterprise's affairs.

188.  MERS thus violated 18 U.S.C. § 1962 (c).

189.  By conspiring with the other members of the Enterprise to violate 18 U.S.C. §§ 1962 (a)-(c), MERS violated 18 U.S.C. § 1962 (d).

190.  MERS is an entity that exists independently of the racketeering Enterprise

191.  MERS has committed two or more RICO predicate acts within the last 10 years, constituting a continuing pattern of racketeering.

## THE KNUCKLES KOMOSINSKI & MANFRO LAW FIRM

192.  PLAINTIFF realleges all prior allegations of fact as if separately stated hereat.

193.  In any securitized mortgage backed securities foreclosure action, such as the
Zebrowski foreclosure action, it is the mortgage loan servicer (SELENE in this
case), that is actually the enterprise "King Pin" or "Mob Boss" responsible for
the initiation of the foreclosure litigation, and is the ultimate arbiter of
material decisions affecting the course of the litigation.

194.  Defendant SELENE, the mortgage loan servicer, is the Enterprise person that
was responsible for hiring KKM and its attorneys to prosecute the
Enterprise's unlawful Zebrowski foreclosure action. [7]

195.  SELENE has a retainer agreement with KKM that authorized KKM to initiate
and prosecute the Enterprise's unlawful Zebrowski foreclosure action.

196.  KKM employed attorney Defendant KOSSAR.

197.  KKM employs attorney Defendant KOMOSINSKI.

198.  KOMOSINSKI holds a partnership interest in KKM.

199.  The KKM  law firm is essentially the "Enforcer" in this racketeering
Enterprise.

---

[7]   In the past ten years, SELENE, WILMINGTON, KKM, and KOMOSINSKI have
been members of an association-in-fact in at least 15 mortgage loan foreclosure actions in New
York and New Jersey.

200. KKM, through its partners and employees, was responsible for initiating the fraudulent foreclosure action against the Zebrowskis on or about April 12, 2016, using the mails and wire services to file and serve the foreclosure action summons and fraudulent complaint.

201. The fraudulent foreclosure action commenced against the Zebrowskis and maintained against PLAINTIFF GARRASI herein, continues to this date.

202. KKM, through its partners and employees, was responsible for the drafting of the plaintiff TRUSTEE'S fraudulent Complaint, Reply, Motions, perjured Affirmations and Certifications, Discovery demands, and responses to Defendant GARRASI'S Amended Answer, his opposing Motions, Reply Affidavits, and GARRASI's Discovery demands in the years 2016, 2017, 2018, and part of 2019.

203. Using the mails or wire services, KKM caused its partners, employees, and agents to file and serve plaintiff TRUSTEE'S fraudulent Complaint, Reply, Motions, perjured Affirmations and Certifications, Discovery demands, and responses to Defendant GARRASI'S Amended Answer, his opposing Motions, Reply Affidavits, and GARRASI's Discovery demands in the years 2016, 2017, 2018, and part of 2019.

204. As an example, on July 7, 2016, PLAINTIFF GARRASI made a motion to intervene in the foreclosure action based on his deeded interest in the subject real property, 7 Stablegate Drive, Clifton Park, NY 12065.

205. On or about August 22, 2016, KKM and KOMOSINSKI caused attorney Justin P. Robinson to file and serve an affirmation in opposition to GARRASI's motion.

206. Robinson, using the mails and/or wire services, filed and served the affirmation in opposition.

207. In his affirmation, Robinson falsely claimed that "the aforementioned mortgage was ultimately assigned to plaintiff by [WELLS FARGO's] Assignment of Mortgage dated September 3, 2015.

208. Robinson also recited the fact that mortgage assignment was recorded in the Saratoga County Clerk's office on September 23, 2015, Instrument No. 2015028496.

209. At the time that KKM and KOMOSINSKI directed Robinson to sign, file, and serve his affirmation, KKM and KOMOSINSKI knew that Zebrowski mortgage assignment from WELLS FARGO to TRUSTEE plaintiff was false, fraudulent, and unlawful.

210. Robinson in his affirmation also falsely stated that "TRUSTEE plaintiff has incurred large sums of money for taxes, insurance, legal fees, and other expenses."

211. KKM and KOMOSINSKI also knew at that time of Robinson's affirmation that TRUSTEE plaintiff had never paid the aforementioned expenses, and to the extent that any such expenses were being paid, they were being paid solely by SELENE, not TRUSTEE plaintiff.

212. On October 25, 2016, Judge Chauvin granted GARRASI's motion to intervene in the foreclosure action.

213. All the foregoing are matters of public record having been filed in the Saratoga County Clerk's office by KKM, its partners, and/or its employees.

214. On or about April 5, 2019, using FedEx mail service, KKM caused its partners, employees, and agents to send McGlinchey Stafford–TRUSTEE's new attorneys–what KKM purported was the "Original Zebrowski Collateral File," allegedly containing the original Zebrowski Note, but actually containing the Zebrowski Note with the forged SunTrust indorsement. **EXHIBIT O** annexed herewith.

215. The Collateral file was sent to McGlinchey Stafford, PLLC in New York City.

216. At the time that KKM sent the collateral file containing the forged Zebrowski Note indorsement, KKM and its partners and employees knew that the

Zebrowski Note in the collateral file contained the forged indorsement that purported to negotiate the Note from SunTrust to WELLS FARGO.

217. The KKM collateral file documentation was received by McGlinchey Stafford and was signed for by Mitra Singh, an attorney with McGlinchey Stafford at the time.

218. KKM received legal fees from SELENE and/or other members of the Enterprise for prosecuting the fraudulent Zebrowski foreclosure action.

219. KKM thus derived income from SELENE and/or other members of the Enterprise, and then used, invested, or reinvested some part of that income in the establishment and operation of an enterprise, i.e., its law firm, which was engaged in, or its activities affected, interstate commerce.

220. Since the Zebrowski foreclosure action Enterprise was unlawful, KKM's prosecution of that action violated 18 U.S.C. § 1962 (a).

221. KKM was engaged in actions that affect interstate commerce through a pattern of racketeering activity, i.e., mail fraud and wire fraud.

222. KKM maintained and interest in the foreclosure action Enterprise.

223. KKM thus violated 18 U.S.C. § 1962 (b).

224. KKM was employed by or associated with the unlawful foreclosure Enterprise.

225. KKM participated, directly or indirectly, in the conduct of the Enterprise's scheme or artifice to defraud.

226. KKM thus violated 18 U.S.C. § 1962 (c).

227. By conspiring with the other members of the Enterprise to violate 18 U.S.C. §§ 1962 (a)-(c), KKM violated 18 U.S.C. § 1962 (d).

228. KKM is an entity that exists independently of the racketeering Enterprise.

229. KKM has committed two or more RICO predicate acts within the last 10 years, constituting a continuing pattern of racketeering.

## ATTORNEY RICHARD F. KOMOSINSKI

230.  PLAINTIFF realleges all prior allegations of fact as if separately stated hereat.

231.  Defendant KOMOSINSKI is a managing partner of the Defendant KKM law firm.

232.  As such, KOMOSINSKI was fully aware of the material facts, circumstances, and the legal issues associated with the Enterprise's foreclosure action.

233.  At all times relevant herein, KOMOSINSKI managed and oversaw the overall foreclosure litigation for the racketeering Enterprise.

234.  KOMOSINSKI was the attorney that initiated the fraudulent Enterprise foreclosure action, after he received all the fraudulent documentation from SELENE necessary to file the Summons and Complaint against the defendants in the Zebrowski Enterprise foreclosure action.

235.  KOMOSINSKI was also the KKM partner responsible for providing all the perjured initiatory certifications and affirmations to the county clerk and the court, warranting and representing to the clerk and the court that the Zebrowski foreclosure action was well grounded both in law and fact.

236.  On or about April 11-12, 2016, KOMOSINSKI signed both the Zebrowski Enterprise foreclosure action Complaint and also the Notice of Pendency as attorney for the foreclosure plaintiff TRUSTEE.

237.  The Notice of Pendency falsely claimed that the Zebrowski mortgage "was ultimately assigned [by WELLS FARGO] to TRUSTEE plaintiff by written assignment dated September 3, 2015." [8]

238.  Using the U.S. mails and/or wire services, on or about April 12, 2016, KKM and KOMOSINSKI, acting individually or in concert, filed or caused to be filed the fraudulent Enterprise foreclosure Complaint and Notice of Pendency with and in the Saratoga County Clerk's office.

239.  Along with the plaintiff's fraudulent Enterprise foreclosure Complaint filed on or about April 12, 2016, Defendant KOMOSINSKI signed a Certificate of Merit, pursuant to CPLR 3012-b, dated April 11, 2016.

240.  In his Certificate of Merit, KOMOSINSKI falsely swore that he had reviewed the facts of the case and pertinent documents, including the mortgage and note, and all instruments of assignment.

---

[8]  On March 24, 2017, using the mails or wire services, KOMOSINSKI renewed the Notice of Pendency, again falsely stating that the Zebrowski Mortgage was ultimately assigned to foreclosure plaintiff TRUSTEE, and filed the Notice in the Saratoga County Clerk's office.

241. In his Certificate of Merit, KOMOSINSKI falsely swore that he had consulted about the facts of this case with Dawn Berry, a purported Assistant Vice President of SELENE, attorney in fact and purported mortgage loan servicing agent for the foreclosure plaintiff TRUSTEE.

242. In his Certificate of Merit, KOMOSINSKI falsely swore that upon his review and consultation, to the best of his knowledge, information, and belief, that there was a reasonable basis for the commencement of the foreclosure action, and that "plaintiff is the creditor entitled to enforce rights under the mortgage and note."

243. KOMOSINSKI also swore in his Certificate of Merit that he was aware of his obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200), and 22 NYCRR Part 130.

244. KOMOSINSKI also signed the blue-blacker affixed to the foreclosure Complaint pursuant to Rule 130-1.1-a.

245. At the time that Defendant KOMOSINSKI made these written representations in his Certificate of Merit, the representations were false, and KOMOSINSKI knew them to be false.

246. At the time that Defendant KOMOSINSKI made these written representations, he intended for defendants in the Enterprise foreclosure action to justifiably rely upon them.

247. The Zebrowski Defendants in the Enterprise foreclosure action did justifiably rely upon the written misrepresentations.

248. The Zebrowski Defendants in the Enterprise foreclosure action were thereupon damaged in the amount of $49,000, because they sold their residence in Clifton Park, NY that had approximately $50,000 in equity, to PLAINTIFF GARRASI, who had also become a defendant in the Enterprise foreclosure action, for the sum of $1,000.00.

249. On or about April 19, 2016, using the U.S. mails and/or wire services, KOMOSINSKI and KKM thereupon had the fraudulent Enterprise foreclosure Summons and Complaint sent to Eric Baestlein, a Process Server, to be served upon the defendants.

250. Process Server Baestlein personally served Defendant David M. Zebrowski with the fraudulent Summons and Complaint at 9 Tudor Lane, Clifton Park, NY 12065, on April 29, 2016.

251. GARRASI, the PLAINTIFF herein and the successor in interest to the Zebrowskis by way of their deed conveyance of the subject premises to him on June 29, 2016, defended against KOMOSINSKI's fraudulent representations.

252. KOMOSINSKI'S false representations and submissions of forged and false documents sent via the U.S. mails and wire services to GARRASI, the

Zebrowskis, and the Saratoga County Clerk and the foreclosure judge, caused GARRASI to expend $17,718.24 in legal fees to the law firm of E. Stewart Jones, Hacker & Murphy, LLP, to defend against the Enterprise foreclosure action.

253. GARRASI also suffered additional financial damages in the form of motion fees/filing fees, postage, copying costs, and office supplies consumed.

254. KOMOSINSKI'S false representations and submissions were also instrumental in causing both the Saratoga County Clerk and the foreclosure court to expend unnecessarily government resources and funds by having to record false and forged documents and to review and adjudicate pending legal matters and motions in the Enterprise's fraudulent foreclosure action.

255. On or about January 11, 2018, KKM, KOMOSINSKI, and KOSSAR, acting separately or in concert with each other, and using the U.S. mails and/or wire services, filed the TRUSTEE'S Motion for Summary Judgment with the Saratoga County Clerk and with the foreclosure court judge, Hon. Robert Chauvin.

256. Using the U.S. mails and/or wire services KKM, KOMOSINSKI, KOSSAR, acting separately or in concert with each other, served GARRASI with TRUSTEE'S summary judgment motion papers.

257. It was not until PLAINTIFF GARRASI served a subpoena upon the original Zebrowski lender, SunTrust Mortgage, Inc. in 2019, and until SunTrust's responded to the subpoena, that Garrasi discovered that SunTrust had sold the Zebrowski mortgage note not to WELLS FARGO, but rather to Freddie Mac.

258. And as stated previously, WELLS FARGO could not have sold the Zebrowski note to TRUSTEE in 2015, because WELLS FARGO never owned the Zebrowski note.

259. All the foregoing was fully known to Defendant KOMOSINSKI prior to even filing the Zebrowski foreclosure action on April 12, 2016.

260. And from the filing of the Zebrowski foreclosure action on April 12, 2016, until the time that the McGlinchey Stafford law firm was substituted in as counsel for PLAINTIFF TRUSTEE, Defendants KKM, KOMOSINSKI, and/or KOSSAR willfully, wantonly, and intentionally concealed WELLS FARGO's, WILMINGTON's, SELENE's, MERS', BCAT's and TRUSTEE's fraudulent actions, forgeries, and false material representations in the Zebrowski foreclosure action, as well as those of their agents and employees, from the foreclosure defendants, the foreclosure courts, and the Saratoga County Clerk.

261. Defendants KKM, KOMOSINSKI, and KOSSAR's scheme and artifice to defraud over the course of their involvement in the Zebrowski Enterprise foreclosure action violated 18 U.S.C. 1961 et seq.

262. GARRASI, as well as the Zebrowskis, the Saratoga County Clerk, and the foreclosure courts are thus entitled to compensatory damages, treble damages, and punitive damages.

263. Thereafter, KOMOSINSKI supervised Defendant KOSSAR's litigation efforts and the other KKM employees and agents that were assisting KOSSAR and KOSSAR's successors in the Enterprise foreclosure action.

264. Defendant KOMOSINSKI took all the actions alleged in this Complaint intentionally, and participated in the Enterprise willfully, knowingly, and wantonly.

265. Defendant KOMOSINSKI actively participated in the Enterprise scheme and artifice to defraud the Zebrowskis, the County Clerk, the foreclosure courts, and GARRASI.

266. KOMOSINSKI received legal fees from KKM for prosecuting the Zebrowski Enterprise foreclosure action.

267. KOMOSINSKI thus derived income from KKM, and then used, invested, or reinvested some part of that income in the establishment and operation of

an enterprise, i.e., his law firm, which was engaged in or its activities affected interstate commerce.

268.  Since the Zebrowski Enterprise foreclosure action was unlawful, KOMOSINSKI's knowing participation in the prosecution of that action using the mails and wire services constituted a pattern of racketeering and violated 18 U.S.C. § 1962 (a).

269.  KOMOSINSKI was engaged in actions that affect interstate commerce through a pattern of racketeering activity, i.e., mail fraud and wire fraud.

270.  KOMOSINSKI maintained and interest in or was associated with both KKM and the foreclosure action Enterprise.

271.  KOMOSINSKI thus violated 18 U.S.C. § 1962 (b).

272.  The foreclosure Enterprise's actions, through a pattern of racketeering activity (mail fraud and wire fraud), affected interstate commerce.

273.  KOMOSINSKI  was employed by or associated with the unlawful foreclosure Enterprise.

274.  KOMOSINSKI participated, directly or indirectly, in the conduct of the Enterprise's affairs.

275.  KOMOSINSKI thus violated 18 U.S.C. § 1962 (c).

276. By conspiring with the other members of the Enterprise to violate 18 U.S.C. §§ 1962 (a)-(c), KOMOSINSKI violated 18 U.S.C. § 1962 (d).

277. KOMOSINSKI is a natural person and exists independently of the racketeering Enterprise.

278. KOMOSINSKI has committed two or more RICO predicate acts within the last 10 years, constituting a continuing pattern of racketeering.

## ATTORNEY STUART L. KOSSAR

279. PLAINTIFF realleges all prior allegations of fact as if separately stated hereat.

280. At all times relevant herein, Defendant KOSSAR was an employee of KKM.

281. KOSSAR's role in the Enterprise was to tend to the day-to-day Zebrowski foreclosure action litigation, making sure that the Enterprise foreclosure action kept moving forward toward plaintiff TRUSTEE's goal of a judgment of foreclosure and sale.

282. Defendants KOSSAR and KOMOSINSKI worked not only as a team, but also worked with Defendants SELENE, WILMINGTON, TRUSTEE, MERS, BCAT, and KKM, and their employees and agents, to obtain the judgment of foreclosure and sale and, ultimately, the anticipated liquidation of the Stablegate Drive collateral.

283. For example, using the mails or wire services, KOSSAR was responsible for filing and serving motions papers that included perjured affirmations, certifications, affidavits, Replies to counterclaims, assertion of affirmative defenses, and responses to motions and discovery notices.

284. In the course of doing so, and using the mails and or wire services, KOSSAR also served copies of the above documents upon GARRASI.

285.  On or about July 18, 2016, PLAINTIFF GARRASI herein, filed an Answer to the TRUSTEE's foreclosure Complaint.

286.  The Answer contained a Counterclaim.

287.  Using the mails or wire services, on or about December 13, 2016, Defendant KOSSAR filed and served a Verified Reply to GARRASI's Answer, asserting various affirmative defenses.

288.  In his Verified Reply KOSSAR falsely swore that:

    a.  GARRASI did not hold a valid interest or ownership in the subject Stablegate real property;

    b.  Foreclosure plaintiff TRUSTEE had a lawfully assigned mortgage on the subject Stablegate premises;

    c.  GARRASI's claims were wholly subordinate to any interest of the plaintiff in the subject premises.

    d.  GARRASI had no valid interest and/or ownership in the subject premises.

    e.  GARRASI's claim was barred by documentary evidence; and,

    f.  That KOSSAR had read the Verified Reply, knew the contents thereof; that the same was true to his knowledge or the knowledge of his

clients, except as to the matters stated to alleged upon information and belief, and that as to those matters he believed them to be true.

289. However, all the matters stated by KOSSAR in his Reply were stated as facts – – none were stated "on information and belief."

290. KOSSAR also signed the blue backer to the Reply, falsely stating that the contentions contained in the Reply were not frivolous.

291. On or about December 29, 2016, Garrasi filed and served a Verified Amended Answer to the Complaint.

292. The Amended Answer contained a Counterclaim.

293. Using the mails and/or wire services, on January 11, 2017, KOSSAR filed with the court and served upon GARRASI a Verified Reply to the Amended Counterclaim.

294. In his Verified Reply KOSSAR falsely swore that:

a.     GARRASI did not hold a valid interest or ownership in the subject Stablegate real property;

b.     Foreclosure plaintiff TRUSTEE had a lawfully assigned mortgage on the subject Stablegate premises;

c.     GARRASI's claims were wholly subordinate to any interest of the plaintiff in the subject premises.

53

d.      GARRASI had no valid interest and/or ownership in the subject
        premises.

e.      GARRASI's claim was barred by documentary evidence;

f.      That KOSSAR had read the Verified Reply, knew the contents thereof;
        that the same was true to his knowledge or the knowledge of his
        clients, except as to the matters stated to be alleged upon information
        and belief, and that as to those matters he believed them to be true.

295.    However, all the matters stated by KOSSAR in his Reply were stated as facts –
        – none were stated "on information and belief."

296.    Also, on January 11, 2017, KOSSAR signed the blue-backer attached to the
        Verified Reply to GARRASI's Amended Answer, and falsely Certified that upon
        information, belief and reasonable inquiry, the contentions contained in the
        Reply were not frivolous.

297.    On March 9, 2018, GARRASI filed and served a Notice of Cross Motion for
        Summary Judgment, along with a supporting affidavit, sworn to March 6,
        2018.

298.    On or about March 27, 2018, using the mails or wire services, KOSSAR filed
        and served TRUSTEE foreclosure plaintiff's Affirmation in Opposition to
        GARRASI's Cross Motion for Summary Judgment, and in further support of
        the TRUSTEE plaintiff's motion for summary judgment.

299. KOSSAR made his Affirmation in Opposition pursuant to CPLR Rule 2106, and under penalties of perjury.

300. In KOSSAR's affirmation, he falsely stated that the plaintiff had authenticated its position with respect to the foreclosure action.

301. KOSSAR also falsely stated that plaintiff's motion for summary judgment was well supported by the foreclosure Complaint, affidavits and affirmations attached to KOSSAR's Affirmation in Opposition, as well as the requisite supporting documentary evidence including the mortgage, note, and evidence of default.

302. KOSSAR further falsely stated in his Affirmation in Opposition that on August 16, 2005, the Zebrowskis executed and delivered a Note and Mortgage to foreclosure plaintiff TRUSTEE's assignor. [9]

303. KOSSAR also signed the blue-backer, certifying under penalty of perjury that the contentions contained in his affirmation were not frivolous.

304. At the time that he made the above referenced false statements, KOSSAR knew them to be false, and made the false statements in order to further the goals of the Zebrowski foreclosure Enterprise.

---

[9]   In the foreclosure action Plaintiff TRUSTEE'S assignor is claimed to be WELLS FARGO. But as established herein, WELLS FARGO was never either the owner or holder of the Zebrowski Note and Mortgage, SunTrust Mortgage was.

305. On August 18, 2017, using the U.S. mails or wire services, KOSSAR filed and served foreclosure plaintiff TRUSTEE's Opposition to GARRASI's motion to have the Zebrowski note examined by an expert chosen by GARRASI.

306. In his affirmation in opposition, KOSSAR, under penalty of perjury, falsely stated that the Zebrowski note was assigned to the foreclosure plaintiff TRUSTEE.

307. On October 25, 2017, GARRASI filed and served a Motion to Compel foreclosure TRUSTEE plaintiff to comply with certain discovery demands that GARRASI had made previously.

308. On December 12, 2017, KOSSAR, using the mails and/or wire services, filed with the court and served upon GARRASI an Affirmation in Opposition to the Motion to Compel, said affirmation being made under penalty of perjury.

309. In his affirmation, KOSSAR falsely claimed that the Zebrowski SunTrust note and mortgage were ultimately assigned [by WELLS FARGO] to foreclosure TRUSTEE plaintiff.

310. At the time the KOSSAR made those false statements under oath via his affirmation, KOSSAR knew that the statements were false.

311. KOSSAR intended for plaintiff GARRASI and the court to justifiably rely upon those false statements and misrepresentations.

312.    The court did justifiably rely upon KOSSAR's false representations, expended judicial resources unnecessarily, and was damaged thereby.

313.    In contesting and opposing KOSSAR's fraudulent representations, and in order to protect his real property interests GARRASI, was compelled unnecessarily to expend approximately $17,718.24 in legal fees paid to the law firm of E. Stewart Jones, Hacker & Murphy, LLP, in defense of the Enterprise foreclosure action and in preparation for trial.

314.    GARRASI was also compelled to expend funds for office supplies, motion fees, postage, copying costs, etc.

315.    It was not until GARRASI served a subpoena duces tecum upon the original lender SunTrust Mortgage, Inc. in 2019, and until SunTrust's responded to the subpoena, that GARRASI discovered that SunTrust had sold the Zebrowski mortgage note not to WELLS FARGO Bank, N.A., but rather to Freddie Mac in November 2005.

316.    Contrary to KOSSAR's false representation as stated above, WELLS FARGO could not have lawfully sold, negotiated, transferred, or assigned the Zebrowski Note to foreclosure plaintiff TRUSTEE in 2015, because WELLS FARGO was never the owner of the Zebrowski Note.

317.    And Defendant KOSSAR was fully aware of WELLS FARGO's non-ownership of the Zebrowski Note when KKM and KOMOSINSKI filed the Zebrowski

foreclosure action on April 12, 2016, or KOSSAR knew about WELLS FARGO's non-ownership of the Note shortly thereafter.

318. And from the filing of the Zebrowski foreclosure action on April 12, 2016, until the time that the McGlinchey Stafford law firm was substituted in as counsel for PLAINTIFF TRUSTEE, Defendants KKM, KOMOSINSKI, and/or KOSSAR willfully, wantonly, knowingly, and intentionally concealed WELLS FARGO's fraudulent actions, and false material representations in the Zebrowski Enterprise foreclosure action from GARRASI, the Zebrowskis, the Saratoga County Clerk, and the foreclosure courts.

319. Defendant KOSSAR's active and knowing participation in the Enterprise scheme and artifice to defraud from 2016 to the time that KOSSAR left the KKM firm in 2018, constituted a clear violation of not only 18 U.S.C. § 1961 *et seq.* but also constituted Judiciary Law § 487 fraud, entitling PLAINTIFF herein to treble damages.

320. Using the mails or wire services, KOSSAR initiated and responded to correspondence between himself, the court, and GARRASI related to the Zebrowski Enterprise foreclosure action subsequent to April 12, 2016 through approximately the first half of 2018.

321. Since the Zebrowski Enterprise foreclosure action was unlawful, KOSSAR's knowing and active participation in the Enterprise's prosecution of that

action, using the mails and wire services, constituted a pattern of racketeering and violated 18 U.S.C. § 1962 (a).

322. KOSSAR was engaged in actions that affect interstate commerce through a pattern of racketeering activity, i.e., mail fraud and wire fraud.

323. KOSSAR maintained and interest in or was associated with both KKM and the foreclosure action Enterprise.

324. KOSSAR thus violated 18 U.S.C. § 1962 (b).

325. The foreclosure Enterprise's actions, through a pattern of racketeering activity (mail fraud and wire fraud), affected interstate commerce.

326. KOSSAR  was employed by or associated with the unlawful foreclosure Enterprise.

327. KOSSAR participated, directly or indirectly, in the conduct of the Enterprise's affairs.

328. KOSSAR thus violated 18 U.S.C. § 1962 (c).

329. By conspiring with the other members of the Enterprise to violate 18 U.S.C. §§ 1962 (a)-(c), KOSSAR violated 18 U.S.C. § 1962 (d).

330. KOSSAR is a natural person and exists independently of the racketeering Enterprise.

331.   KOSSAR has committed two or more RICO predicate acts within the last 10

years, constituting a continuing pattern of racketeering.

## COUNT 2

### FACTUAL ALLEGATIONS AGAINST
### ATTORNEYS KOMOSINSKI AND KOSSAR
### VIOLATION OF NEW YORK JUDICIARY LAW § 487 FRAUD

333.   PLAINTIFF realleges all prior allegations of fact as if separately stated hereat.

334.   New York Judiciary Law § 487 states that an attorney or counselor who is
       guilty of any deceit or collusion, or consents to any deceit or collusion, with
       intent to deceive the court or any party, violates New York Judiciary Law §
       487.

335.   An attorney or counselor who violates New York Judiciary Law § 487
       commits a misdemeanor and is liable for treble damages to parties that
       suffered damages as a result of the attorney or counselor's actions.

336.   Defendants KOMOSINSKI and KOSSAR's active and knowing participation in
       the racketeering Enterprise scheme and artifice to defraud as described
       above and herein, constituted a clear violation of New York Judiciary Law §
       487.

337.   On a number of occasions identified above, Defendants KOMOSINSKI and
       KOSSAR, using the mails and/or wire services, knowingly, willfully, and
       wantonly filed and served fraudulent documents, forged instruments, and
       perjured certifications and affirmations with the county clerk, the

foreclosure courts, the Zebrowskis, the Bank of New York Mellon, and upon PLAINTIFF GARRASI.

338. Specifically, at all times relevant herein, KOMOSINSKI, and KOSSAR had in their possession Zebrowski Notes Nos. 1, 2 & 3.

339. Defendants KOMOSINSKI and KOSSAR knew before the Enterprise foreclosure action was commenced, or shortly thereafter, that as of October 31, 2012, when WELLS FARGO filed its proof of claim in the Zebrowski bankruptcy case, that Zebrowski Notes 1 & 2 were not specifically indorsed to WELLS FARGO.

340. Moreover, at all times relevant herein, KOMOSINSKI, and KOSSAR had in their possession Zebrowski Notes Nos. 1, 2 & 3, and knew that when they filed the Enterprise foreclosure action against the Zebrowskis on April 12, 2016, that Zebrowski Note # 3 had been fraudulently altered via a forged indorsement stamp that falsely represented that SunTrust had specifically indorsed Zebrowski Note # 3 to WELLS FARGO.

341. In fact, at all times relevant herein, Defendants KOMOSINSKI and KOSSAR knew that SunTrust had sold the Zebrowski mortgage note to Freddie Mac in 2005, and not to WELLS FARGO years later.

342. Nevertheless, using the mails and/or wire services, the Defendants KOMOSINSKI, and KOSSAR knowingly and intentionally submitted the

fraudulent <u>Zebrowski Note # 3</u> to the Saratoga County Clerk, to Judge

Chauvin, and by succession to Judge Nolan, thereby defrauding the county

clerk and the foreclosure courts.

343.  Using the mails and/or wire services, the Defendants KOMOSINSKI, and

KOSSAR also knowingly and intentionally submitted the fraudulent

<u>Zebrowski Note # 3</u> in papers served upon the foreclosure Defendants

Zebrowskis and GARRASI during and throughout the course of the still

pending Enterprise foreclosure action.

344.  Judges Nolan and Chauvin, Defendants Zebrowski, GARRASI, and the

Saratoga County Clerk in the foreclosure action, justifiably relied upon the

fraudulent <u>Zebrowski Note # 3</u>, and the fraudulent mortgage assignment

that was an incident thereto, and were damaged as stated herein and above.

345.  The actions of the Defendants KOMOSINSKI, and KOSSAR described above,

constituted a fraud upon the Nolan and Chauvin courts, the Zebrowskis, and

GARRASI, and were a serious violation of New York Judiciary Law § 487,

entitling PLAINTIFF GARRASI to treble damages.

346.  Further, by filing these false and fraudulent papers with the Saratoga County

Clerk and the Nolan and Chauvin courts, Defendants KKM, KOMOSINSKI, and

KOSSAR willfully, wantonly, and intentionally violated the following New

York Penal Code Statutes:

a.      Penal Law § 175.30 Offering a false instrument for filing in the second degree;

b.      Penal Law § 115.00 Criminal facilitation in the fourth degree;

c.      Penal Law § 210.10 Perjury in the second degree;

d.      Penal Law § 210.35 Making an apparently sworn false statement in the second degree;

e.      Penal Law § 210.40 Making an apparently sworn false statement in the first degree;

f.      Penal Law § 210.45 Making a punishable false written statement.

## FEDERAL AND STATE STATUTES
## VIOLATED BY THE RICO DEFENDANTS

The RICO Defendants acting in their Enterprise capacities have violated the following Federal criminal statutes:

a.   18 U.S.C. § 4. Misprision of felony.

b.   18 U.S.C. § 152. Filing A False Proof of Claim in a Bankruptcy Case.

c.   18 U.S.C. § 493. Bonds And Obligations Of Certain Lending Agencies.

d.   18 U.S.C. § 513. Securities Of The States And Private Entities.

e.   18 U.S.C. § 1341. Mail Fraud.

f.   18 U.S.C. § 1343. Wire Fraud.

g.   18 U.S.C. § 1344. Bank Fraud (against Bank of NY Mellon, junior mortgagee).

h.   18 U.S.C. § 2314. Transportation Of Stolen Goods, Securities * * *.

i.   18 U.S.C § 2315.  Sale Or Receipt Of Stolen Goods, Securities * * *.

The RICO Defendants acting in their Enterprise capacities also violated the following New York State Penal Law statutes, all of which are felonies:

a.  Penal Law § 170.10  Forgery In The Second Degree.

b.  Penal Law § 170.25. Criminal Possession Of A Forged Instrument In The Second Degree.

c.  Penal Law § 175.35. Offering A False Instrument For Filing In The First Degree.

d.  Penal Law § 210.10. Perjury In The Second Degree.

e.  Penal Law § 215.40. Tampering With Physical Evidence.

f.  New York Penal Law § 460.20. Enterprise Corruption.

**WHEREFORE** PLAINTIFF Robert Garrasi prays for the following relief from this Court:

From each RICO Defendant an award of compensatory treble damages to be determined and awarded by a jury.

From each RICO Defendant Punitive damages awarded by a jury against:

- ♦ WELLS FARGO BANK N.A. – $100,000,000.00.
- ♦ SELENE FINANCE, LP – $100,000,000.00.
- ♦ WILMINGTON SAVINGS FUND SOCIETY, FSB –$100,000,000.00.
- ♦ WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR BCAT 2015-13ATT – $100,000,000.00.
- ♦ BCAT 2015-13ATT – $100,000,000.00.
- ♦ MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. – $10,000,000.00.
- ♦ KNUCKLES, KOMOSINSKI & MANFRO, LLP – $5,000,000.00.
- ♦ RICHARD KOMOSINSKI, ESQ. – $1,000,000.00.
- ♦ STUART KOSSAR, ESQ. – $350,000.00.

From defendants KOMOSINSKI and KOSSAR, an award of treble compensatory damages each as a punishment for their statutory Judiciary Law § 487 violations.

Dated:   February 22, 2021

*Robert Garrasi*

Robert Garrasi
7 Stablegate Drive
Clifton Park, NY 12065
E-mail: Bob.Garrasi@gmail.com
Tel. (518) 322–1779

# EXHIBIT A

CERTIFIED TRUE ORIGINAL

Loan No.: 0202175139

# NOTE

MIN.: 100010402021751395

| August 16, 2005 | LATHAM | New York |
| *[Date]* | *[City]* | *[State]* |

### 7 STABLEGATE DRIVE, CLIFTON PARK, NY 12065
*[Property Address]*

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 312,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is SUNTRUST MORTGAGE, INC.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**

(A)  Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on October, 2005. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 79041, BALTIMORE, MD 21279-0041 or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,845.60 .

**4.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

New York Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                        Form 3233 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 1 of 3                                    12601NY 08/00
www.compliancesource.com                                                                             ©2000, The Compliance Source, Inc.

5.    **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 2.000 % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

New York Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3233 01/01
—THE COMPLIANCE SOURCE, INC.—                                    Page 2 of 3                               1260INY 08/00
www.compliancesource.com                                                                            ©2000, The Compliance Source, Inc.

**10.    UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
**DAVID M ZEBROWSKI**         -Borrower

_____ (Seal)
**MELINDA A ZEBROWSKI**         -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*

New York Fixed Rate Note—Single Family—Fannie Mac/Freddie Mac UNIFORM INSTRUMENT     Form 3233 01/01
—THE COMPLIANCE SOURCE, INC.—                              Page 3 of 3                              1240INY 08/00
www.compliancesource.com                                                                ©2000, The Compliance Source, Inc.

# EXHIBIT  B



SunTrust Bank
Subpoena Services
FL-ORL-7136
P.O. Box 620577
Orlando, FL 32862-0577
Fax 877-220-9403

Date: 08/26/2019

JOHN F HARWICK
E STEWART JONES HACKER MURPHY LLP
28 SECOND STREET
TROY NY 12180



RE:   ZEBROWSKI, DAVID M / ZEBROWSKI, MELINDA
      SS-101734

☒ Enclosed please find the bank documents and/or video responsive to the subpoena.
☐ Enclosed please find partial bank documents in response to the Subpoena. The remaining documents to follow.
☐ CD password(s) will be mailed or faxed separately from CD(s). The disk(s) and/or password(s) may arrive within 2-3 days of each other.
☐ Signature card/Corporate Resolution not on file.
☐ The requested information is beyond the records retention period (7 years- Statements, Checks & Deposits, 5 years- Wire transfers, 5 years- CTR).
☐ The requested information is beyond the video retention period for this branch/ ATM.
☐ Account closed prior to requested date range.
☐ Invalid Account Number(s) / Invalid SSN.
☐ Based upon the information provided, we are unable to locate records for the designated person or entity.
☐ Designated person or entity cannot be confirmed. Please provide additional information via fax 877-220-9403 and we will renew our search (i.e., SSN, TIN, Account #, Address).
☒ The loan was sold as part of a loan pool (pool # 0029812458) to Freddie Mac on November 2, 2005. A screen shot from our loan sales system Embtrust is attached hereto.

...............................................................................................................................

*SunTrust cannot comply with the Subpoena for Improper Service:*
☐ District of Columbia: The subpoena must be served personally at any SunTrust Bank or by certified mail.
☐ Maryland: The subpoena must be served personally at any SunTrust Bank or by certified mail.
☐ Virginia: Subpoena must be served personally on the registered agent or at any SunTrust Bank.
☐ Incorrect bank served, should be served on _____.
☐ Other _____

...............................................................................................................................

☐ *SunTrust Bank does not hold any records for this individual(s). However, you may attempt to contact separate entities of the SunTrust family of companies.*

This request has been processed by SunTrust Bank Subpoena Services Analyst Dana Richardson

RECEIVED
AUG 27 2019



**SUNTRUST**

Subpoena Services
FL-ORL-7136
P.O. Box 620577
Orlando, FL 32862-0577

RE: ZEBROWSKI, DAVID M / ZEBROWSKI, MELINDA

## CERTIFICATION

I, Dana Richardson     do hereby certify under penalties and perjury that I am the custodian of records for SunTrust Bank and that the attached documents are true and accurate copies of our business records, maintained, and/or prepared by our company.

It is further certified that the records were made at or near the time of the occurrence of the matters set forth by a person with knowledge of those matters. The records were made and kept in the course of regularly conducted business activity and it is a regular practice of our company to make and keep such records.

_____
Signature

8-26-19
_____
Date

# EXHIBIT  C



**SARATOGA COUNTY – STATE OF NEW YORK**
KATHLEEN A. MARCHIONE, COUNTY CLERK
40 MCMASTER STREET, BALLSTON SPA, NY 12020

## COUNTY CLERK'S RECORDING PAGE
### ***THIS PAGE IS PART OF THE DOCUMENT – DO NOT DETACH***



| Recording: | |
|---|---|
| Pages | 5.00 |
| Cover Sheet Fee | 5.00 |
| Recording Fee | 20.00 |
| Names | 1.00 |
| Markoffs | 0.50 |
| Education Fee | 20.00 |
| Sub Total: | 51.50 |
| Total: | 51.50 |

**** NOTICE: THIS IS NOT A BILL ****

RECEIPT NO. : 2012211773050

Clerk:        GB
Instr #:      2012025495
Rec Date:     07/12/2012 10:57:06 AM
Doc Grp:      R
Descrip:      ASSIGNMENT
Num Pgs:      2

Party1:   MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS AS NOMINEE FOR
LENDER
Party2:   WELLS FARGO BANK

Record and Return To:


WELLS FARGO BANK NA
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS MN 55440-9790

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN  55440-9790

2012241773050

Kathleen A Marchione Saratoga Co Clerk

2012025495
07/12/2012   10:57:06 AM
2 Pages                    RECORDED
ASSIGNMENT

**CORPORATE ASSIGNMENT OF MORTGAGE**

Saratoga, New York
"ZEBROWSKI"

MERS #: 100010402021761395  SIS #: 1-888-679-6377

Date of Assignment: July 9th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUNTRUST
MORTGAGE, INCORPORATED, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501; 1901 E
VOORHEES ST STE C., DANVILLE, IL  61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA  50328

Executed By: DAVID M ZEBROWSKI, MELINDA A ZEBROWSKI, JOINTLY  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUNTRUST MORTGAGE, INC., ITS SUCCESSORS AND
ASSIGNS
Date of Mortgage:  08/16/2005 Recorded:  08/29/2005  in Book/Reel/Liber: 03919 Page/Folio:  00345 as Instrument
No.: X200606868  In the County of Saratoga, State of New York.

Property Address: 7 STABLEGATE DRIVE, CLIFTON PARK, NY  12065

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $312,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage. IN WITNESS WHEREOF, the assignor has executed these presents the day and
year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUNTRUST MORTGAGE,
INCORPORATED, ITS SUCCESSORS AND ASSIGNS
On  7-9-12

By: _James Lane_       , Assistant
Secretary

STATE OF Iowa
COUNTY OF Polk

On the  9th  day of  July  in the year  2012  before me, the undersigned,
personally appeared  James Lane  , Assistant Secretary, personally known to me or proved to
me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by
his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s)
acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the
County of Polk, State of Iowa.

WITNESS my hand and official seal,

_Angela Eakins_
Angela Eakins
Notary Expires:  1/24/15
Polk, Iowa

ANGELA EAKINS
Commission Number 771342
My Commission Expires
January 24, 2015

(This area for notarial seal)

*SJ2*SJ2WFEMP07/09/2012 02:12:30 PM* WFEM01WFEMA0000000000000006466NYSARAT* NYSTATE_MORT_ASSIGN_ASSN **JLBWFES*

# EXHIBIT  D

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT of NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor:** David M. Zebrowski and Melinda A. Zebrowski a/k/a Melinda A. Justiniano

**Case Number:** 12-11799 (REL)

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property):
Wells Fargo Bank, N.A.

**COURT USE ONLY**

**Name and address where notices should be sent:**
Wells Fargo Bank, N.A.
Attention: Bankruptcy Department/MAC #D3347-014
3476 Stateview Blvd.
Fort Mill, SC 29715

Telephone number: 1-800-274-7025    email: pcenotifications@wellsfargo.com

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

**Name and address where payment should be sent (if different from above):**
Wells Fargo Bank, N.A.
Attention: Bankruptcy Payment Processing/MAC #X2502-04C
One Home Campus
Des Moines, IA 50328

Telephone number: 1-800-274-7025    email: pcenotifications@wellsfargo.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $ 279,393.70

If all or part of the claim is secured, complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** Mortgage Note
(See instruction #2)

**3.  Last four digits of any number by which creditor identifies debtor:**
5541

**3a. Debtor may have scheduled account as:**
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
WFCMGF1211799NYN59335541
(See instruction #3b)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:**  ☒ Real Estate  ☐ Motor Vehicle  ☐ Other
**Describe:** 7 Stablegate Drive, Clifton Park, NY 12065

**Value of Property:** _____

**Annual Interest Rate** 5.87500 %  ☒ Fixed or ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of time case filed, included in secured claim, if any:**
$ 32.29

**Basis for perfection:** Mortgage/Deed of Trust

**Amount of Secured Claim:** $ 279,393.70

**Amount Unsecured:** $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**
$ _____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

B 10 (Official Form 10) (12/11)

**7. Documents:** Attach are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #7, and the definition of "redacted".)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction # 8)

Check the appropriate box.

☐ I am the creditor.    ☒ I am the creditor's authorized agent.    ☐ I am the trustee, or the debtor,    ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)    or their authorized agent.    (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Michael T. Rozea, Esq.
Title:  Attorney for Movant
Company:  McCabe, Weisberg and Conway, P.C.
Address and telephone number (if different from notice address above):    _____    October 31, 2012
(Signature)    (Date)

145 Huguenot St.
Suite 210
New Rochelle, NY 10801

Telephone number: 914.636.8900    email:  mrozea@mwc-law.com

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

---

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into one or more categories shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

B 10 (Attachment A) (12/11)

## Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2)

Name of debtor: David M. Zebrowski and Melinda A. Zebrowski a/k/a Melinda A. Justiniano

Case number: 12-11799 (REL)

Name of creditor: Wells Fargo Bank, N.A.

Last four digits of any number you use to identify the debtor's account:     5541

### Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in item 1 on your Proof of Claim Form).

1. Principal due     (1)  $278,005.60

| 2. Interest due | Interest rate | From mm/dd/yyyy | To mm/dd/yyyy | Amount | |
|---|---|---|---|---|---|
| | 5.875% | 09/1/2012 | 09/29/2012 | $1,288.10 | |
| | ___% | __/__/__ | __/__/__ | $_____ | |
| | ___% | __/__/__ | __/__/__ | $_____ | |
| | Total interest due as of the petition date | | | $1,288.10 | Copy total here ➤ (2) + $1,288.10 |

3. Total principal and interest due     (3)  $279,293.70

### Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in item 1 on the Proof of Claim form).

| Description | Dates Incurred | Amount |
|---|---|---|
| 1. Late Charges | _____ | (1)  $_____ |
| 2. Non-sufficient funds (NSF) fees | _____ | (2)  $_____ |
| 3. Attorney's fees | _____ | (3)  $_____ |
| 4. Filing fees and court costs | _____ | (4)  $_____ |
| 5. Advertisement costs | _____ | (5)  $_____ |
| 6. Sheriff/auctioneer fees | _____ | (6)  $_____ |
| 7. Title costs | _____ | (7)  $_____ |
| 8. Recording fees | _____ | (8)  $_____ |
| 9. Appraisal/broker's price opinion fees | _____ | (9)  $_____ |
| 10. Property inspection fees | _____ | (10)  $_____ |
| 11. Tax advances (non-escrow) | _____ | (11)  $_____ |
| 12. Insurance advances (non-escrow) | _____ | (12)  $_____ |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3). | _____ | (13)  $ 33.29 |
| 14. Property preservation expenses. Specify: _____ | _____ | (14)  $_____ |
| 15. Other. Specify: _____ | _____ | (15)  $_____ |
| 16. Other. Specify: _____ | _____ | (16)  $_____ |
| 17. Other. Specify: _____ | _____ | (17)  $_____ |

18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above.     (18)  $ 33.29

B 10 (Attachment A) (12/11)

Page 2

## Part 3: Statement of Amount Necessary to Cure Defaults as of the Petition Date

Does the installment payment amount include an escrow deposit?

☐ No

☒ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

| 1. Installment payments due | Date last payment received by creditor | 06/15/2012 | | |
|---|---|---|---|---|
| | Number of installment payments due | (1)   0 | | |
| 2. Amount of installment payment due | _ installments @ | $ ___ | | |
| | _ installments @ | $ ___ | | |
| | _ installments @ | + $ ___ | | |
| | Total installment payments due as of the petition date | $ 0.00 | Copy total here > | (2) $ 0.00 |
| 3. Calculation of cure amount | Add total prepetition fees, expenses and charges | | Copy total from Part 2 here > | + $ 33.29 |
| | Subtract total of unapplied funds (funds received but not credited to account) | | | - $ 0.00 |
| | Subtract amounts for which debtor is entitled to a refund | | | - $ 0.00 |
| | Total amount necessary to cure default as of the petition date | | | (3) $ 33.29 |

Copy total onto item 4 of Proof of Claim form

**Right to Foreclosure Statement**: Debtor executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

## PROOF OF CLAIM
## ITEMIZATION FORM

CREDITOR: Wells Fargo Bank, N.A.
LOAN NUMBER: 5541
DEBTORS: David M. Zebrowski and Melinda A. Zebrowski a/k/a Melinda A. Justiniano
BANKRUPTCY CASE: 12-11799 NDNY BANKRUPTCY COURT
FILING DATE: 6/29/2012

### TOTAL CLAIM

PRINCIPAL BALANCE                                          $278,095.60

INTEREST FROM 6/1/2012 THROUGH 6/29/2012          $1,298.10
INTEREST RATE: 5.875%

   TOTAL                                                  $279,393.70

### ARREARAGE

ESCROW SHORTAGE                                          $33.29

   TOTAL                                                  $33.29

# EXHIBIT  E

B 10 (Official Form 10) (12/11)

| DEFINITIONS | | INFORMATION |

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10)

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only initials of a minor's name and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et. seq.), and any applicable orders of the bankruptcy court.

# EXHIBIT  F

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

07/12/2012      10:57:06 AM
2 Pages                RECORDED
ASSIGNMENT

Kathleen A Marchione Saratoga Co Clerk

## CORPORATE ASSIGNMENT OF MORTGAGE

Saratoga, New York
"ZEBROWSKI"

MERS #: 1

Date of Assignment: July 9th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUNTRUST
MORTGAGE, INCORPORATED, ITS SUCCESSORS AND ASSIGNS at BOX 2026 FLINT MI 48501, 1901 E
VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: WELLS FARGO BANK, NA at 1 HOME CAMPUS, DES MOINES, IA 50328

Executed By: DAVID M ZEBROWSKI, MELINDA A ZEBROWSKI, JOINTLY  To: MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUNTRUST MORTGAGE, INC., ITS SUCCESSORS AND
ASSIGNS
Date of Mortgage: 08/16/2005 Recorded: 08/29/2005  In Book/Reel/Liber: 03919 Page/Folio: 00345 as Instrument
No.: X200808868  In the County of Saratoga, State of New York.

Property Address: 7 STABLEGATE DRIVE, CLIFTON PARK, NY  12065

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an
assignment within the secondary mortgage market.

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $312,000.00 with interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage. IN WITNESS WHEREOF, the assignor has executed these presents the day and
year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR SUNTRUST MORTGAGE,
INCORPORATED, ITS SUCCESSORS AND ASSIGNS
On  7-9-12

By:
   James Lane      , Assistant
Secretary

STATE OF Iowa
COUNTY OF Polk

On the   9 th   day of   July   , in the year   2012   before me, the undersigned,
personally appeared   James Lane   , Assistant Secretary, personally known to me or proved to
me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their capacities(s), and that by
his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s)
acted, executed the instrument, and that such individuals(s) made such appearance before the undersigned in the
County of Polk, State of Iowa.

WITNESS my hand and official seal.

Angela Eakins
Notary Expires:  1/24/15
Polk, Iowa

ANGELA EAKINS
Commission Number 771342
My Commission Expires
January 24, 2015

(This area for notarial seal)



**SARATOGA COUNTY -- STATE OF NEW YORK**
KATHLEEN A. MARCHIONE, COUNTY CLERK
40 MCMASTER STREET, BALLSTON SPA, NY 12020

**COUNTY CLERK'S RECORDING PAGE**
***THIS PAGE IS PART OF THE DOCUMENT -- DO NOT DETACH***



RECEIPT NO. : 2012211773050

Clerk:      GB
Instr #:    2012025495
Rec Date:   07/12/2012 10:57:06 AM
Doc Grp:    R
Descrip:    ASSIGNMENT
Num Pgs:    2

Party1:    MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS AS NOMINEE FOR
LENDER
Party2:    WELLS FARGO BANK

Recording:

| | |
|---|---|
| Pages | 5.00 |
| Cover Sheet Fee | 5.00 |
| Recording Fee | 20.00 |
| Names | 1.00 |
| Markoffs | 0.50 |
| Education Fee | 20.00 |
| Sub Total: | 51.50 |

| | |
|---|---|
| Total: | 51.50 |

**** NOTICE: THIS IS NOT A BILL ****

Record and Return To:


WELLS FARGO BANK NA
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS MN 55440-9790

# EXHIBIT  G

CERTIFIED TRUE ORIGINAL

Loan No.:

# NOTE

MIN.:

| August 16, 2005 | LATHAM | New York |
|---|---|---|
| *[Date]* | *[City]* | *[State]* |

**7 STABLEGATE DRIVE, CLIFTON PARK, NY 12065**
*[Property Address]*

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 312,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **SUNTRUST MORTGAGE, INC.** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**

**(A) Time and Place of Payments**

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on October, 2005. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 79041, BALTIMORE, MD 21279-0041 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,845.60.

**4.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

5.    LOAN CHARGES
      If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6.    BORROWER'S FAILURE TO PAY AS REQUIRED
      (A) Late Charge for Overdue Payments
      If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  2.000 % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.
      (B) Default
      If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
      (C) Notice of Default
      If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
      (D) No Waiver By Note Holder
      Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
      (E) Payment of Note Holder's Costs and Expenses
      If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.    GIVING OF NOTICES
      Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
      Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE
      If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.    WAIVERS
      I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

New York Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                              Form 3233 01/01
—THE COMPLIANCE SOURCE, INC.—                              Page 2 of 3                              3240INY 0800
www.compliancesource.com                                                                        ©2000, The Compliance Source, Inc.

10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DAVID M ZEBROWSKI          -Borrower

_____ (Seal)
MELINDA A ZEBROWSKI        -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

[Sign Original Only]

Without Recourse
PAY TO THE ORDER OF

SunTrust Mortgage, Inc.

_____
Deborah P. Ellis, Vice President

New York Fixed Rate Note— Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3233 01/01
—THE COMPLIANCE SOURCE, INC.—          Page 3 of 3          1360INV 08/00
www.compliancesource.com          ©2000, The Compliance Source, Inc.

# EXHIBIT  H

# NOTE

August 16, 2005                    LATHAM                    New York
[Date]                             [City]                    [State]

### 7 STABLEGATE DRIVE, CLIFTON PARK, NY 12065
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 312,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is SUNTRUST MORTGAGE, INC.. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**

(A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the 1st day of each month beginning on October, 2005. I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. BOX 79041, BALTIMORE, MD 21279–0041 or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,845.60 .

**4.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.



5.    **LOAN CHARGES**

   If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6.    **BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A) Late Charge for Overdue Payments**

   If the Note Holder has not received the full amount of any monthly payment by the end of  15  calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be  2.000 % of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

   **(B) Default**

   If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   **(C) Notice of Default**

   If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

   **(D) No Waiver By Note Holder**

   Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   **(E) Payment of Note Holder's Costs and Expenses**

   If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.    **GIVING OF NOTICES**

   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

   Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.    **WAIVERS**

   I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.  If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement.  The notice will give me at least 30 days to make the required payment.  The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument.  If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
DAVID M ZEBROWSKI                -Borrower

_____ (Seal)
MELINDA A ZEBROWSKI              -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

By _____
JASON P. BRUMM
VICE PRESIDENT LOAN DOCUMENTATION

Without Recourse
PAY TO THE ORDER OF
WELLS FARGO BANK, N.A.

SunTrust Mortgage, Inc.

Deborah P. Ellis, Vice President

New York Fixed Rate Note—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
—THE COMPLIANCE SOURCE, INC.—                    Page 3 of 3
www.compliancesource.com

Form 3233 01/01
1300INY 08/00
©2000, The Compliance Source, Inc.

# EXHIBIT  I



**SARATOGA COUNTY – STATE OF NEW YORK**
SARATOGA COUNTY CLERK
CRAIG A. HAYNER
40 MCMASTER STREET, BALLSTON SPA, NY 12020

---

**COUNTY CLERK'S RECORDING PAGE**
***THIS PAGE IS PART OF THE DOCUMENT – DO NOT DETACH***

---



**INSTRUMENT #:   2015019773**

Receipt#: 2015211982609
Clerk:      GW
Rec Date:  07/08/2015 09:58:29 AM
Doc Grp:   R
Descrip:   POWER OF ATTORNEY
Num Pgs:   4

Party1:    WELLS FARGO BANK
Party2:    SELENE FINANCE LP

Recording:

| | |
|---|---:|
| Pages | 15.00 |
| Cover Sheet Fee | 5.00 |
| Recording Fee | 20.00 |
| Cultural Ed | 14.25 |
| Records Management – Coun | 1.00 |
| Records Management – Stat | 4.75 |
| Names | 0.00 |

Total:                                    60.00
**** NOTICE: THIS IS NOT A BILL ****

Record and Return To:


ELECTRONICALLY RECORDED BY SIMPLIFILE

2015019773
07/08/2015   09:58:29 AM
4 Pages        RECORDED
POWER OF ATTORNEY
Saratoga County Clerk

## FORM OF LIMITED POWER OF ATTORNEY

### KNOW ALL PERSONS BY THESE PRESENTS:

THAT, WELLS FARGO BANK, N.A. ("Company"), by these presents does hereby make, constitute and appoint Selene Finance LP, a limited partnership ("Servicer"), Company's true and lawful attorney-in-fact, and hereby grants it authority and power to take, through its duly authorized officers, the Actions (as such term is defined herein) in Company's name, place and stead. This limited power of attorney ("Limited Power of Attorney") is given in connection with, and relates solely to that certain Partial Cancellation of Servicing Rights Contract dated as of February 17, 2015 by and between Federal Home Loan Mortgage Corporation and the Company, and those certain Interim Servicing Agreements dated May 14, 2015 and May 15, 2015, respectively, by and between GCAT Management Services 2015-13 LLC. and the Company, under the terms of which Company transferred the servicing rights to certain mortgage loans (such loans, the "Loans"). Each of the Loans comprises a promissory note evidencing a right to payment and performance secured by a security interest or other lien on real property evidenced by one or more mortgages, deeds of trust, deeds to secure debt or other forms of security instruments (each, a "Mortgage"). The parties agree that this Limited Power of Attorney is coupled with an interest.

As used above, the term "Actions" shall mean and be limited to the following acts, in each case only with respect to one or another of the Loans and only as mandated or permitted by federal, state or local laws or other legal requirements or restrictions:

1. Execute or file assignments of mortgages, or of any beneficial interest in a Mortgage;

2. Execute or file reconveyances, deeds of reconveyance or releases or satisfactions of mortgage or similar instruments releasing the lien of a Mortgage;

3. Correct or otherwise remedy any errors or deficiencies contained in any transfer or reconveyance documents provided or prepared by Company or a prior transferor; including, but not limited to note indorsements;

4. Indorse all checks, drafts and/or other negotiable instruments made payable to Company as payments by borrowers in connection with the Loans;

5. Execute or file quitclaim deeds or, only where necessary and appropriate, special warranty deeds or other deeds causing the transfer of title to a third party, in respect of property acquired through a foreclosure or deed-in-lieu of foreclosure ("REO Property");

6. Execute and deliver documentation with respect to the marketing and sale of REO Property; including, without limitation: listing agreements; purchase and sale agreements; escrow instructions; settlement statements; and any other document necessary to effect the transfer of REO Property;

7. Execute or file any documents necessary and appropriate to substitute the creditor or foreclosing party in a bankruptcy or foreclosure proceeding in respect of any of the Loans;

With respect to the Actions, Company gives to said attorney-in-fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all that said attorney-in-fact shall lawfully do or cause to be done by authority hereof.

This Limited Power of Attorney is entered into and shall be governed by the laws of the State of New York without regard to conflicts of law principles of such state and is valid only through November 10,

2015 unless cancelled prior to said date if in the Company's sole discretion, the Servicer acts outside of the Actions permitted above or in any way misuses this Power of Attorney.

Servicer hereby agrees to indemnify and hold the Company, and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of the misuse of this Limited Power of Attorney by the Servicer. The foregoing indemnity shall survive the termination of this Limited Power of Attorney.

*[Remainder of page intentionally left blank]*

IN WITNESS WHEREOF, the undersigned has executed this Limited Power of Attorney this day, June 10, 2015.

Unofficial Witnesses:

Name: Scott Gillquist

Name: Brenda Dieveney

Wells Fargo Bank, N.A.

By:
Name: Gretel Meier
Title: Vice President

By:
Name: John Chozen
Title: Vice President

STATE OF MINNESOTA          :
                                             : ss.
HENNEPIN COUNTY           :

On this day, June 10, 2015, before me, the undersigned, personally appeared Gretel Meier and John Chozen, personally known to me or proved to me on the basis of satisfactory evidence to be the individuals whose names are subscribed to the within instrument and acknowledged to me that the individuals executed the same in their capacity, and that said instrument was executed on behalf of said corporation.

Notary Public
My commission expires: January 31, 2017

MATTHEW JOSEPH BEUMER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2017
Commission # 31019712

# EXHIBIT   J



# SARATOGA COUNTY – STATE OF NEW YORK
### SARATOGA COUNTY CLERK
### CRAIG A. HAYNER
### 40 MCMASTER STREET, BALLSTON SPA, NY 12020

### COUNTY CLERK'S RECORDING PAGE
### ***THIS PAGE IS PART OF THE DOCUMENT – DO NOT DETACH***



INSTRUMENT #:  2015028496

Receipt#: 2015211997305
Clerk:     GB
Rec Date: 09/23/2015 01:31:33 PM
Doc Grp:  R
Descrip:  ASSIGNMENT OF MORTGAGE
Num Pgs:  5

Party1:   WELLS FARGO BANK BY ATTY
Party2:   SUNTRUST MORTGAGE INC

Recording:

| | |
|---|---|
| Pages | 20.00 |
| Cover Sheet Fee | 5.00 |
| Recording Fee | 20.00 |
| Cultural Ed | 14.25 |
| Records Management - Coun | 1.00 |
| Records Management - Stat | 4.75 |
| Names | 1.50 |
| Markoffs | 0.50 |

Total:                           67.00
**** NOTICE: THIS IS NOT A BILL ****

Record and Return To:

ELECTRONICALLY RECORDED BY SIMPLIFILE

```
2015028496
09/23/2015    01:31:33 PM
5 Pages       RECORDED
ASSIGNMENT OF MORTGAGE
Saratoga County Clerk
```

Loan Number: 1503103520
Servicer ID: 848895

After Recording Return To:
Avenue 365 Lender Services
401 Plymouth Road, Ste 550
Plymouth Meeting, PA 19462

## ASSIGNMENT OF MORTGAGE

For valuable consideration paid, **WELLS FARGO BANK, N.A.**, whose address is **1 Home Campus, Des Moines, Iowa 50328** the holder of the mortgage described as follows:

That certain mortgage described as follows: made by DAVID M. ZEBROWSKI AND MELINDA A. ZEBROWSKI JOINTLY to Mortgage Electronic Registration System, Inc., solely as nominee for SUNTRUST MORTGAGE INC. in the amount of $312,000.00, dated 8/16/2005, recorded on 8/29/2005, at BOOK: 3919, PAGE: 345, INSTRUMENT NO.: 200606868, relating to that property commonly known as: 7 STABLEGATE DR., CLIFTON PARK, NY 12065, in the county of SARATOGA and described as parcel number: Section: 278.17 Block: 4 Lot: 6.

Which is a lien on the real property described below in Exhibit A, attached hereto, does hereby convey, grant, sell, assign, transfer and set over the described mortgage together with all interest secured thereby, all liens and any rights due or to become due thereon to Wilmington Savings Fund Society, FSB, doing Business as Christiana Trust, not in its individual capacity, but solely as trustee for BCAT 2015-13ATT whose mailing address is 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801.

Chain of Assignments relating to the above described mortgage see Exhibit B, attached hereto.

This Assignment is not subject to the requirements of Section 275 of the Real Property Law because it is an assignment within the secondary mortgage market.

1

Property Address: 7 STABLEGATE DR., CLIFTON PARK, NY 12065

Executed by the undersigned this _September 3_ , 2015.

WELLS FARGO BANK, N.A., By: Selene Finance, LP, its attorney-in-fact*

By: Joe Jaret
Its: Assistant Vice President

*Power of Attorney recorded in the Official Records of Saratoga County, New York as Instrument No.: 2015019773.

STATE OF TEXAS
COUNTY OF HARRIS

*(Complete Venue with State, Country, Province or Municipality.)*

On the _3rd_ day of _September_ in the year 2015, before me, the undersigned, personally appeared **Joe Jaret its Assistant Vice President, on behalf of WELLS FARGO BANK, N.A., By: Selene Finance, LP, its attorney-in-fact** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose names(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in the _City of Houston, Texas_ *(Insert the City or other political subdivision and the State or Country or other place the acknowledgment was taken.)*

Signature of Notary Public

jaimee cook

My commission expires:
1/30/2016

JAIMEE COOK
Notary Public
STATE OF TEXAS
My Comm. Exp. 01/30/2016

This instrument prepared by: Jay Rosenberg, Esq., and reviewed by Ross M. Rosenberg, Esq., Rosenberg LPA, Attorneys At Law, 3805 Edwards Road, Suite 550, Cincinnati, Ohio 45209. (513) 247-9605.

2

Property Address: 7 STABLEGATE DR., CLIFTON PARK, NY 12065

## EXHIBIT B
## (CHAIN OF ASSIGNMENTS)

| MORTGAGE/DEED OF TRUST/AGMT | CLOSED | OPEN (CREDIT LINE) | MEGAN: Y/N | REV MTG: Y/N |
|---|---|---|---|---|
| MTGOR/ASSIGNOR: mers as a nominee for nominee for Suntrust mortge Inc | | | | |
| MTGEE/ASSIGNEE: Wells Fargo Bank NA | | | | |
| DATED: 7/9/12 | | RECORDED: 7/12/12 | | ACIC 7/9/12 |
| DOC ID#: 201202S495 | | | | |

4

Property Address: 7 STABLEGATE DR., CLIFTON PARK, NY 12065

# EXHIBIT  K

# PACKAGE INFORMATION ENCLOSED
## DATE: 1/14/2016 8:27:32 AM

## Package Summary:

| Carrier Name | Tracking Number | Tracking Direction | From | To | Created By |
|---|---|---|---|---|---|
| Fedex | 6603 8595 9304 | Incoming | Custodian - Wells Fargo | Selene - Houston | Lenise Dumas(S) |

## Package Content:

| Loan Number | Borrower | Investor | Investor Loan Number | Old Loan Number | Document Type | Task Id | From and To |
|---|---|---|---|---|---|---|---|
| ▓▓ | ▓▓▓ | ▓▓▓ | ▓▓▓ | ▓▓▓ | Collateral File | 0 | N/A |
| ▓▓ | ▓▓ | ▓▓ | ▓▓ | ▓▓ | Collateral File | 0 | N/A |
| ▓▓ | ▓▓ | ▓▓ | ▓▓ | ▓▓ | Collateral File | 0 | N/A |
| ▓▓ | ▓▓ | ▓▓ | ▓ | ▓ | Collateral File | 0 | N/A |
| ▓▓ | ▓▓ | ▓▓ | ▓▓ | ▓▓ | Collateral File | 0 | N/A |
| ▓▓ | ▓▓ | ▓▓ | ▓▓ | ▓▓ | Collateral File | 0 | N/A |
| ▓▓ | ▓▓ | ▓▓ | ▓▓ | ▓▓ | Collateral File | 0 | N/A |
| ▓▓ | ▓▓ | ▓▓ | ▓▓ | ▓▓ | Collateral File | 0 | N/A |
| ▓▓ | ▓▓ | ▓▓ | ▓▓ | ▓▓ | Collateral File | 0 | N/A |
| ▓▓ | ▓▓ | ▓▓ | ▓ | ▓ | Collateral File | 0 | N/A |
| ▓▓8895 (Selene) | DAVID M ZEBROWSKI | BCAT 2015-13ATT (2019-1) | ▓▓3520 | ▓▓5541 | Collateral File | 0 | N/A |
| ▓▓ | ▓▓ | ▓▓ | ▓▓ | ▓▓ | Collateral File | 0 | N/A |
| ▓▓ | ▓▓ | ▓▓ | ▓▓ | ▓▓ | Collateral File | 0 | N/A |
| | | | ▓▓ | ▓▓ | Collateral File | 0 | N/A |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ██████ | ██████ | ██████ | ██████ | ██████ | Collateral File | 551221 | N/A |
| ██████ | ██████ | | ██████ | ██████ | Collateral File | 484230 | N/A |
| ██████ | ██████ | ██████ | ██████ | ██████ | Collateral File | 489580 | N/A |
| ██████ | | ██████ | ██████ | ██████ | Collateral File | 558971 | N/A |
| ██████ | ██████ | | ██████ | ██████ | Collateral File | 484231 | N/A |
| ██████ | ██████ | | | | Collateral File | 502092 | N/A |
| ██████ | ██████ | ██████ | ██████ | ██████ | Collateral File | 422009 | N/A |
| ██████ | ██████ | ██████ | | | Collateral File | 484232 | N/A |
| ██████ | ██████ | ██████ | | | Collateral File | 513310 | N/A |
| ██████ | ██████ | ██████ | ██████ | | Collateral File | 504264 | N/A |
| ██████ | ██████ | ██████ | ██████ | ██████ | Collateral File | 451928 | N/A |
| ██8895 (Selene) | DAVID M. ZEBROWSKI | BCAT 2015-13ATT (2019-1) | ██3520 | ██5541 | Collateral File | 404261 | N/A |
| ██████ | ██████ | ██████ | | | Collateral File | 479649 | N/A |
| ██████ | | ██████ | | | Collateral File | 443773 | N/A |
| ██████ | ██████ | ██████ | | | Collateral File | 412081 | N/A |
| ██████ | | ██████ | ██████ | | Collateral File | 350237 | N/A |
| ██████ | | ██████ | ██████ | | Collateral File | 457546 | N/A |
| ██████ | ██████ | ██████ | ██████ | | Collateral File | 469115 | N/A |
| ██████ | ██████ | ██████ | ██████ | | Collateral File | 487678 | N/A |
| ██████ | ██████ | ██████ | ██████ | | Collateral File | 551222 | N/A |
| ██████ | ██████ | ██████ | ██████ | | Collateral File | 484233 | N/A |
| ██████ | | | ██████ | ██████ | Collateral File | 494973 | N/A |

| | Collateral File | 513311 | N/A |
| | Collateral File | 497226 | N/A |
| | Collateral File | 364864 | N/A |
| | Collateral File | 499649 | N/A |
| | Collateral File | 489581 | N/A |
| | Collateral File | 567417 | N/A |
| | Collateral File | 558998 | N/A |
| | Collateral File | 454437 | N/A |
| | Collateral File | 541550 | N/A |
| | Collateral File | 504265 | N/A |
| | Collateral File | 524117 | N/A |
| | Collateral File | 451930 | N/A |
| | Collateral File | 484239 | N/A |
| | Collateral File | 463512 | N/A |
| | Collateral File | 492645 | N/A |
| | Collateral File | 446138 | N/A |

Acknowledgement of receipt for the documents listed above:

Date:

Please fax signed acknowledgedment to:                    866-929-4551

Sincerely,

COLLATERAL MAIL CENTER DEPT

# EXHIBIT  L

## PACKAGE INFORMATION ENCLOSED
### DATE: 10/26/2018 3:45:17 PM

### Package Summary:

| Carrier Name | Tracking Number | Tracking Direction | From | To | Created By |
|---|---|---|---|---|---|
| Fedex | 463115216083 | Incoming | Custodian - Wells Fargo | Selene - Houston | Lenise Dumas(S) |

### Package Content:

| Loan Number | Borrower | Investor | Investor Loan Number | Old Loan Number | Document Type | Task Id | From and To |
|---|---|---|---|---|---|---|---|
| ▆▆▆ | ▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | Collateral File | 0 | N/A |
| ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | Collateral File | 0 | N/A |
| ▆8895 (Selene) | DAVID M ZEBROWSKI | BCAT 2015-13ATT (2019-1) | ▆▆3520 | ▆▆5541 | Collateral File | 0 | N/A |
| ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | Collateral File | 0 | N/A |
| ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | Collateral File | 0 | N/A |
| ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | Collateral File | 0 | N/A |
| ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | Collateral File | 0 | N/A |
| ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | ▆▆▆ | Collateral File | 0 | N/A |

Acknowledgement of receipt for the documents listed above: _____

Date: _____

Please fax signed acknowledgedment to:        866-929-4551

Sincerely,

COLLATERAL MANAGEMENT DEPT

# EXHIBIT  M



**SARATOGA COUNTY – STATE OF NEW YORK**
SARATOGA COUNTY CLERK
CRAIG A. HAYNER
40 MCMASTER STREET, BALLSTON SPA, NY 12020

**COUNTY CLERK'S RECORDING PAGE**
***THIS PAGE IS PART OF THE DOCUMENT – DO NOT DETACH***



INSTRUMENT #:   2020009051

Receipt#: 2020212321398
Clerk:      GW
Rec Date: 04/09/2020 11:39:35 AM
Doc Grp:  R
Descrip:   POWER OF ATTORNEY
Num Pgs:  8

Party1:   WILMINGTON SAVINGS FUND SOCIETY
AS TRUSTEE
Party2:   SELENE FINANCE LP

Recording:

| | |
|---|---:|
| Pages | 35.00 |
| Cover Sheet Fee | 5.00 |
| Recording Fee | 20.00 |
| Cultural Ed | 14.25 |
| Records Management – Coun | 1.00 |
| Records Management – Stat | 4.75 |
| Names | 1.00 |

Total:                              81.00
**** NOTICE: THIS IS NOT A BILL ****

BCAT 2015-13ATT → BCAT 2020-1TT

Dated MAY 13, 2015

But only recorded in April 2020

Record and Return To:

ELECTRONICALLY RECORDED BY CSC INGEO

This page constitutes the Clerk's
endorsement, required by section
316-a (5) & 319 of the Real Property
Law of the State of New York with a
stamped signature underneath.

*Craig A. Hayner*

Saratoga County Clerk

```
┌─────────────────────────────────┐
│  2020009051                     │
│                                 │
│  04/09/2020    11:39:35 AM      │
│  8 Pages       RECORDED         │
│  POWER OF ATTORNEY              │
│  Saratoga County Clerk         │
└─────────────────────────────────┘
```

_____

Space above this line for recorder's Use Only

Title of Document: LIMITED POWER OF ATTORNEY

GRANTOR:
WILMINGTON SAVINGS FUND SOCIETY , FSB D/B/A CHRISTIANA TRUST , NOT INDIVIDUALLY BUT
AS TRUSTEE FOR BCAT 2015-13ATT
C/O
SELENE FINANCE LP
9990 RICHMOND AVENUE SUITE 400 S
HOUSTON, TX 77042


GRANTEE:
SELENE FINANCE LP
9990 RICHMOND AVENUE SUITE 400 S
HOUSTON, TX 77042


Return to:
Brown & Associates
C. Brown
2316 Southmore
Pasadena, TX 77502
713-941-4928

20150432134
09/22/2015   ER   $32.00

PA
J

DOCUMENT DRAFTED BY AND
RECORD AND RETURN TO:
Selene Finance LP
8201 Cypress Plaza Drive
Jacksonville, FL  32256

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## LIMITED POWER OF ATTORNEY

BCAT 2015-13ATT having an office at 500 Delaware Avenue, 11th Floor, Wilmington, Delaware 19801 ("Owner"), hereby constitutes and appoints Selene Finance LP having an office at 9990 Richmond Avenue, Suite 400, Houston, Texas 77042 ("Servicer"), and in its name, aforesaid Attorney-In-Fact, by and through any authorized representative appointed by the Board of Directors of Servicer, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (12) below; provided however, that the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the Flow Servicing Agreement (the "Agreement") dated May 14, 2015, by and between Owner and Servicer, and no power is granted hereunder to take any action that would be adverse to the interests of Owner. This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") and REO properties ("REO Properties") owned by Owner. These Loans are comprised of Mortgages, Deeds of Trust, Deeds to Secure Debt and other forms of Security Instruments (collectively the "Security Instruments") and the Mortgage Notes secured thereby.

This Appointment shall apply only to the following enumerated transactions and nothing herein or in the Agreement shall be construed to the contrary:

1. The modification or re-recording of a Mortgage or Deed of Trust, where said modification or re-recording is solely for the purpose of correcting the Mortgage or Deed of Trust to conform same to the original intent of the parties thereto or to correct title errors discovered after such title insurance was issued; provided that (i) said modification or re-recording, in either instance, does not adversely affect the lien of the Mortgage or Deed of Trust as insured and (ii) otherwise conforms to the provisions of the Agreement.

2. The subordination of the lien of a Mortgage or Deed of Trust to an easement in favor of a public utility company of a government agency or unit with powers of eminent domain; this section shall include, without limitation, the execution of partial satisfactions/releases, partial reconveyances or the execution or requests to trustees to accomplish same.

- 1 -

1EE

ER 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

3. The conveyance of the properties to the mortgage insurer, or the closing of the title to the property to be acquired as real estate owned, or conveyance of title to real estate owned.

4. The completion of loan assumption agreements.

5. The full satisfaction/release of a Mortgage or Deed of Trust or full conveyance upon payment and discharge of all sums secured thereby, including, without limitation, cancellation of the related Mortgage Note.

6. The assignment of any Mortgage or Deed of Trust and the related Mortgage Note, in connection with the repurchase of the mortgage loan secured and evidenced thereby.

7. The full assignment of a Mortgage or Deed of Trust upon payment and discharge of all sums secured thereby in conjunction with the refinancing thereof, including, without limitation, the assignment of the related Mortgage Note.

8. With respect to a Mortgage or Deed of Trust, the foreclosure, the taking of a deed in lieu of foreclosure, evicting (to the extent allowed by federal, state or local laws), or the completion of judicial or non-judicial foreclosure or termination, cancellation or rescission of any such foreclosure, including, without limitation, any and all of the following acts:

   a. the substitution of trustee(s) serving under a Deed of Trust, in accordance with state law and the Deed of Trust;

   b. the preparation and issuance of statements of breach or non-performance;

   c. the preparation and filing of notices of default and/or notices of sale;

   d. the cancellation/rescission of notices of default and/or notices of sale;

   e. the taking of deed in lieu of foreclosure; and

   f. the preparation and execution of such other documents and performance of such other actions as may be necessary under the terms of the Mortgage, Deed of Trust or state law to expeditiously complete said transactions in paragraphs 8.(a) through 8.(e) above.

9. With respect to the sale of property acquired through a foreclosure or deed-in lieu of foreclosure, including, without limitation, the execution of the following documentation:

   a. listing agreements;

   b. purchase and sale agreements;

ER 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

-2-

c.   grant/warranty/quit claim deeds or any other deed causing the transfer of title of the property to a party contracted to purchase same;

d.   escrow instructions; and

e.   any and all documents necessary to effect the transfer of property.

10.   The modification or amendment of escrow agreements established for repairs to the mortgaged property or reserves for replacement of personal property.

11.   All documents and instruments necessary in the appearance and prosecution of suits for possession and unlawful detainer, and eviction actions seeking, without limitation, possession of any real property acquired through foreclosure and any and all related damages.

12.   All documents and instruments necessary in the appearance, prosecution and defending of bankruptcy proceedings; instruments appointing one or more substitute trustees or special purpose entities ("SPECs") to act in place of the corresponding entity named in any deed of trust.

The undersigned gives said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned might or could do.

This appointment is to be construed and interpreted as a Limited Power of Attorney. The enumeration of specific items, rights, acts or powers herein is not intended to, nor does it give rise to, and it is not to be construed as a general power of attorney.

Nothing contained herein shall (i) limit in any manner any indemnification provided by the Servicer to Owner under the Agreement, or (ii) be construed to grant the Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Owner, except as specifically provided for herein or in the Agreement. If the Servicer receives any notice of suit, litigation or proceeding in the name of Owner then the Servicer shall promptly forward a copy of same to the Owner.

This Limited Power of Attorney is not intended to extend the powers granted to the Servicer under the Agreement or to allow the Servicer to take any action with respect to Mortgages, Deeds of Trust or Mortgage Notes not authorized by the Agreement.

The Servicer hereby agrees to indemnify and hold the Owner and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of or in connection with the misuse by Servicer of this Limited Power of Attorney. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Agreement or the earlier resignation or termination of Servicer under the Agreement.

ER 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

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney; and may be satisfied that this Limited Power of Attorney shall continue in full force and effect and has not been revoked unless an instrument of revocation has been made in writing by the undersigned.

ER 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

- 4 -

Witness my hand and seal this 13th day of May, 2015.
NO CORPORATE SEAL

By:   WILMINGTON   SAVINGS   FUND   **3OR**
SOCIETY, FSB, d/b/a CHRISTIANA TRUST,
not in its individual capacity but solely as
Trustee for BCAT 2015-13ATT

By: _____

Name: Jeffrey R. Everhart
Title:   Assistant Vice President

Witness: Karen Huffman

Witness: Ruth Bradley

Attest:  Cedric Strother, Trust Officer

ER 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

## CORPORATE ACKNOWLEDGMENT

State of Delaware

County of New Castle

On this 13th day of May, 2015, before me, the undersigned, a Notary Public in and for said
County and State, personally appeared Jeffrey R. Everhart, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the persons who executed the within instrument as
Assistant Vice President, respectively of BCAT 2015-13ATT, and acknowledged to me that such
national banking association executed the within instrument pursuant to its by-laws or a
resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____
Yulia Davydovitch

My commission expires: _____ 24, 2016

Document drafted by
BCAT 2015-13ATT

757754-4-3256

[Signature Page – PoA – Servicing
Agreement]

80-40591334

20150432134
# Pages 6
09/22/2015 01:24 PM
e-Filed & e-Recorded in the
Official Public Records of
HARRIS COUNTY
STAN STANART
COUNTY CLERK
Fees   $32.00

ER 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

RECORDERS MEMORANDUM
This instrument was received and recorded electronically
and any blackouts, additions or changes were present
at the time the instrument was filed and recorded.

Any provision herein which restricts the sale, rental, or
use of the described real property because of color or
race is invalid and unenforceable under federal law.
THE STATE OF TEXAS
COUNTY OF HARRIS
I hereby certify that this instrument was FILED in
File Number Sequence on the date and at the time stamped
hereon by me; and was duly RECORDED in the Official
Public Records of Real Property of Harris County, Texas.

COUNTY CLERK
HARRIS COUNTY, TEXAS

# EXHIBIT  N

Page 1 of 1

ORIGIN ID:NQIA    (713) 625-2081
HELEN STEELS

9990 RICHMOND AVE #400

HOUSTON, TX 77042
UNITED STATES US

SHIP DATE: 29OCT18
ACTWGT: 0.50 LB
CAD: 4322016/INET4040

BILL SENDER

TO   COLLATERAL FC
KNUCKLES KOMOSINSKI & MANFRO, LLP
565 TAXTER RD
SUITE 590
ELMSFORD NY 10523
(914) 345-3020 X 327          REF: NOT DD
INV:
PO:                          DEPT:




FedEx
Express

TUE - 30 OCT 3:00P

STANDARD OVERNIGHT

TRK#    7735 9081 5722
0201

XE NESA                   10523
              NY-US      SWF



After printing this label:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.

RE: Bailment Letter for: SELENE FINANCE, LP

Selene Loan Number : ●●8895
Borrower : DAVID M ZEBROWSKI
Address : 7 STABLEGATE DR
Attorney Name : Knuckles, Komosinski & Manfro, LLP NY
Attorney Address : 565 Taxter Rd, Ste 590. Elmsford, NY, 10523

Knuckles, Komosinski & Manfro, LLP NY: ("Bailee") has been retained by SELENE FINANCE, LP in connection with litigation proceedings relating to the loan listed above. Bailee has possession and/or control of the following original documents:

Note | Original
Endorsement | Original | Suntrust Mortgage Inc to Wells Fargo Bank, N.A.
Endorsement | Original | Wells Fargo Bank, N.A. to Blank
Security Instrument | Original | Recorded

Bailee understands that it is acting as agent, bailee and custodian for the benefit of owner in accordance in prudent and customary practices. Bailee agrees that upon SELENE FINANCE LP's confirmation of receipt of funds from purchaser, bailee shall continue to maintain possession and control of the loan documents, as agent, bailee and custodian for the benefit of purchaser, subject to purchaser's complete control, in accordance with prudent and customary practices.

As these are original documents In which are needed to complete the foreclosure process, we require that you sign and date the attached copy and fax back as soon as possible. Upon receipt of any original unrecorded assignments, please forward the assignments to the county for recording.
In any event in which the assignment (s) or any of the attached original document(s) are no longer needed, it is imperative that the document get returned back to Selene Finance LP, attn: Foreclosure Department at 9990 Richmond, Suite 400S, Houston, TX 77042.

Sincerely,
COLLATERAL MANAGEMENT DEPT

_Elwl Clih_
Signature

_Edward Osika_
Name

_PARALEGAL_
Title

_914345 3020_
Phone Number

# EXHIBIT  O

# Knuckles Komosinski & Manfro LLP

565 Taxter Road, Suite 590 | Elmsford, New York 10523
Tel (914) 345-3020 | eFax (914) 992-9154 | www.kkmllp.com

**Partners**
Mark R. Knuckles
Richard F. Komosinski
Jordan J. Manfro

**PEYTON JOHNSON**
*Records Clerk*
(914) 345-3020, ext.346
PeytonJ@kkmllp.com

April 4, 2019

**Via FedEx Tracking No. 7748 8452 9720**
McGlinchey Stafford, PLLC
Attn: Brian S. McGrath
112 W 34th Street, Suite 1515
New York, NY 10120

**Re:**      Wilmington v. Zebrowski; et al.
**Index No.:**   966/2016

Dear Mr. McGrath,

       Enclosed please find a complete listing for the indicated referenced matters. We kindly request that
you execute below indicating you have received Original Collateral File for these matters, from this
office:

| Loan Number | Borrower | Document |
|---|---|---|
| | DAVID ZEBROWSKI, MELINDA ZEBROWSKI | Original Note |
| | D ZEBROWSKI, MELINDA ZEBROWSKI | Original Recorded Mortgage |

Should you have any questions or concerns, do not hesitate to contact our office.
Please print your name and sign below.

Signed:     _MttPaul Srafa_

Dated:      _4|8|19_

Print Name:   _MITRA PAUL SINGH_

Very truly yours,

Peyton Johnson
*Records Clerk*

Page 1 of 1

ORIGIN ID:NESA      (914) 345-3020
KNUCKLES, KOMOSINSKI & MANFRO, LLP
KNUCKLES, KOMOSINSKI & MANFRO, LLP
565 TAXTER ROAD,
SUITE 590
ELMSFORD, NY 10523
UNITED STATES US

SHIP DATE: 04APR19
ACTWGT: 1.00 LB
CAD: 3080205/INET4100

BILL SENDER

TO  BRIAN S. MCGRATH
MCGLINCHEY STAFFORD, PLLC
112 W 34TH STREET
SUITE1515
NEW YORK NY 10120
(646) 362-4051
INV:
PO:                           DEPT:            REF:

**FedEx** Express

**E**

FRI - 05 APR 10:30A
PRIORITY OVERNIGHT

TRK#
0201   **7748 8452 9720**

**10120**
NY-US   **EWR**

**E3 TSSA**

RECEIVED
APR 0 5 2019
BY: ..........................

# EXHIBIT  P

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SARATOGA

WILMINGTON SAVINGS FUND SOCIETY, FSB,
DOING BUSINESS AS CHRISTIANA TRUST, NOT
IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS
TRUSTEE FOR BCAT 2015-13ATT,

                         Plaintiff,

   -against-

DAVID   M.   ZEBROWSKI;   MELINDA   A.
ZEBROWSKI;   THE   BANK   OF   NEW   YORK
MELLON    TRUST    COMPANY,    NATIONAL
ASSOCIATION, F/K/A THE BANK OF NEW YORK
TRUST  COMPANY,  N.A.,  AS  SUCCESSOR  TO
JPMORGAN  CHASE  BANK,  N.A.,  AS  TRUSTEE
FOR  RFMSII 2006-HI2; "JOHN  DOE #1"  through
"JOHN DOE #10" inclusive the names of the ten last
name  Intervenors  being  fictitious,  real  names
unknown to the Plaintiff, the parties intended being
persons  or  corporations  having  an  interest  in,  or
tenants  or  persons  in  possession  of,  portions  of  the
mortgaged  premises  described  in  the  Complaint,
                                   Intervenors.

**AFFIDAVIT IN SUPPORT OF
MOTION FOR SUMMARY
JUDGMENT**

Index No. 000966/2016

STATE OF ___Florida___ )
COUNTY OF ___Duval___ ) ss:

    ___Anthony D'Addona___, duly sworn, deposes and states:

    That I am the ___Foreclosure Manager___ of Selene Finance LP (hereinafter

"Selene"), the servicer and attorney-in-fact for Wilmington Savings Fund Society, FSB,

Doing Business as Christiana Trust, Not In Its Individual Capacity But Solely as Trustee

for BCAT 2015-13ATT (hereinafter "Plaintiff"), in the above referenced action, as

evidenced by the copy of the limited power-of-attorney annexed hereto. In that capacity,

I am authorized to execute this affidavit on behalf of Plaintiff.

I am familiar with the business records of Plaintiff as well as the business records maintained by Selene for the purpose of servicing mortgage loans on behalf of Plaintiff and I have personal knowledge of the operation of, and the circumstances surrounding the preparation, maintenance, distribution, and retrieval of records in Selene's record keeping systems. These records (which include original documents, data compilations, electronic imaged documents, and others) are made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and are kept in the ordinary course of business activity conducted regularly by Selene. Selene has made and maintained such records with respect to the Defendants' loan which is the subject of the captioned proceeding (the "Subject Loan"). In connection with making this Affidavit, I have acquired personal knowledge of the matters stated herein by examining these business records to the extent they relate to the Subject Loan.

I make this affidavit in support of Plaintiff's application for Summary Judgment, order of reference and amendment of the caption of the within action.

My review of records maintained by Selene reveals that on August 16, 2005, defendants David M. Zebrowksi and Melinda A. Zebrowski (hereinafter "Defendants") duly executed and delivered to SunTrust Mortgage, Inc. ("SunTrust") a Note (hereinafter the "Note") bearing said date, wherein and whereby it was covenanted and agreed that Defendants would repay to SunTrust the principal sum of $312,000.00 with interest as set

2

forth in said Note.

To secure repayment of the sum represented by said Note, on the same date, Defendants duly executed and delivered to Mortgage Electronic Registration Systems, Inc. as nominee for SunTrust (hereinafter the "Mortgage") secured by the premises located at 7 Stablegate Drive, Clifton Park, New York 12065 which premises was more fully described in an annex to said Mortgage. The Mortgage was duly recorded in the Office of the Clerk of Saratoga County on August 29, 2005 in Book 03919 at Page 00345.

That the Note and Mortgage were assigned from SunTrust to Wells Fargo Bank, N.A. to by Assignment of Mortgage dated July 9, 2012 and recorded Office of the Clerk of Saratoga County on July 12, 2012 in Instrument No. 2012025495.

That the Mortgage was assigned from Wells Fargo Bank, N.A. to Plaintiff, Wilmington Savings Fund Society, FSB, Doing Business as Christiana Trust, not in its individual capacity, but solely as trustee for BCAT 2015-13ATT by Assignment of Mortgage dated September 3, 2015 and recorded Office of the Clerk of Saratoga County on September 23, 2015 in Instrument No. 2015028496.

That Plaintiff was the owner and/or holder of the Note and assignee of the Mortgage on the date the Summons and Complaint was filed and as such was the proper party to bring this foreclosure action.

That the original Note was received by Plaintiff's custodian Wells Fargo Bank, located at 751 Kasota Avenue, Suite MDC, Minneapolis, MN since May 14,

3

2015.

That, as the servicer for Plaintiff at the time the original Note was received, Selene Finance LP has access and custody to the Activity Log maintained to track the location of the original collateral. This Activity Log is a business record regularly relied on by Selene Finance in the ordinary course of business. As result of my employment with Selene Finance LP, I am familiar with the Activity Log and the records related thereto including Plaintiff's records, and based on my review of those records, it is clear that the original note bearing an indorsement into blank was maintained by Plaintiff's custodian prior to commencement and during the pendency of this foreclosure action. That a true screen shot of the Activity Log is attached hereto as Exhibit 1.

My review of records maintained by Selene reveals that Demand Notices dated September 9, 2015 were sent to the Defendants via first class mail and certified mail at the mailing address of 7 Stablegate Drive, Clifton Park, NY 12065 which is the premises that is the subject of this action.

My review of the records maintained by Selene further reveals the following regarding the sending of the RPAPL § 1304 required notice (pre-foreclosure 90-Day notice):

On January 8, 2016, RPAPL § 1304 Notices (Pre-Foreclosure 90- Day Notices), typed in fourteen (14) point font with a list of at least five (5) HUD Housing Counseling Agencies that serves the region in which the Defendants are believed to reside, on

4

Defendants at the address of the property secured by the Mortgage, 7 Stablegate Drive, Clifton Park, NY 1206 and to their last know mailing address of 4J Fulham Road, Clifton Park, New York 12065, was served by depositing true copies of the same enclosed in a post-paid properly addressed wrapper, in - a post office - official depository under the exclusive care and custody of the United States Postal Service within the State of New York, by regular and certified mail.  The certified mailing bore United States Postal Service Tracking Number 9314 7100 1170 0848 2457 75 & 9314 7100 1170 0848 2457 37.

Notices are sent to any borrower(s) and mortgagor(s) at the mailing address of record in the system and the property address if different, via first class mail and for RPAPL 1304 notices, also by certified mail, through the United States Postal Service.

That the Defendants failed to comply with the terms of the Note and Mortgage by defaulting in the monthly payment due on February 1, 2014, and monthly thereafter.

On or about or about June 29, 2016, title was purportedly transferred from Defendants to proposed intervener Robert Garrasi by Quitclaim Deed.

That by reason of the default of the Defendant, and pursuant to the acceleration provisions of said Note and Mortgage, the Plaintiff has elected and does elect that the whole of the principal sum secured hereby become immediately due and payable and there is now justly due and payable to the Plaintiff by virtue of such acceleration, the principal sum of $ 268,481.12 plus interest at the contract rate from January 1, 2014.

Plaintiff sets forth it is a national banking association acting as the trustee of a

5

private trust subject to a pooling and servicing agreement and is authorized to conduct business in New York.

I am advised by my attorney that Defendant, Robert Garrasi has interposed an Answer to the Complaint with counterclaims, I respectfully refer to the accompanying affirmation of counsel concerning the legal ramifications of the Answer and Counterclaims.

All of the documents to which reference is made are annexed to Plaintiff's motion papers and incorporated herein by reference.

THEREFORE, I respectfully request that the within relief requested be granted in its entirety.

Wilmington Savings Fund Society, FSB, Doing Business as Christiana Trust, Not In Its Individual Capacity But Solely as Trustee for BCAT 2015-13ATT By Selene Finance LP, Its Servicer and Appointed Attorney In Fact

Printed name: Anthony D'Addona
Title:        Foreclosure Manager
Date:         11 / 7 / 17

6

## UNIFORM ALL PURPOSE CERTIFICATE OF ACKNOWLEDGMENT
### (Outside of New York State)

State of _____ ~~Florida~~

County of _____ Duval

On the _7_ day of _NoV_____ in the year of 2016 before me, the undersigned, personally appeared _____Anthony D'Addona    Foreclosure Manager_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed same in his/her/their capacity(ies) and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such appearance before the undersigned in _Jacksonville_, _Florida_ (Insert the city or other political subdivision and the state or county or other place the acknowledgment was taken)

Notary Public

Alton  Horton
Commission # FF 152104
Expires: AUG 18, 2018
BONDED THRU
1ST FLORIDA NOTARY, LLC

7